PAUL T. BUCHANAN *v.* STATE OF INDIANA.

[No. 277S116.  Filed June 16, 1978.]

*Dolores Goldman,* of Merrillville, for appellant.

*Theodore L. Sendak,* Attorney General, *Elmer Lloyd Whitmer,* Deputy Attorney General, for appellee.

PRENTICE, J.—Defendant (Appellant) was charged by indictment with first degree murder and murder during the commission of a felony, Ind. Code § 35-14-4-1 (Burns 1975), for the death of Robert Schwartz. Following the trial by jury, he was found guilty upon both counts and was sentenced to one term of life imprisonment. This direct appeal presents the following issues:

(1) Whether the trial court erred by admitting into evidence the defendant's signed confession.

(2) Whether it was error to admit into evidence certain photographs of the victim's corpse.

(3) Whether it was error to identify two examining physicians as witnesses of the court.

(4) Whether it was error to restrict the defendant's cross examination of a State's witness.

## ISSUE I

The defendant, a juvenile sixteen years of age, objected to the admission of his written confession upon the ground that he did not knowingly and voluntarily waive his right to remain silent and his right to have counsel present during interrogation. He does not challenge the adequacy of the advisement of his constitutional rights given to him by the police at the time of the interrogation, nor does he allege that the police employed any threat, promise or other form of coercion during the interrogation. Rather, his claim is based upon the allegation that he and his father were not given an adequate opportunity to confer with each other concerning the waiver of rights.

The defendant was arrested at his home and was transported to police headquarters for questioning. His father

followed in his own automobile, and he was with the defendant at all times during the interrogation which took place. The defendant was advised of his right to remain silent and the right to have an attorney present during interrogation. After approximately thirty minutes of interrogation, during which time the defendant denied any involvement in the crime, his father asked the police for the opportunity to talk to his son alone.

The detectives left the interrogation room and closed the door behind them. After ten or fifteen minutes, the father came from the room with tears upon his face. He indicated to the detectives that the defendant was now willing to make a statement. Both the defendant and his father then signed a written waiver of constitutional rights, and the defendant gave a statement in which he admitted his participation in the slaying of the deceased by bludgeoning. The statement was typewritten by one of the detectives and signed by both the defendant and his father.

During the ten to fifteen minutes while the defendant and his father talked in private, the defendant's father did not discuss the legal implications of confessing to the police. He did, because of his own moral convictions, attempt to influence the defendant to tell the truth. At the beginning of their private talk, the father did not believe that the defendant would be seriously involved in the crime, and he was concerned that a continuing police investigation would cast a shadow over the entire family.

Determining the admissibility of the defendant's confession requires the consideration of two separate factors. The first issue is the compliance with the required procedural safeguards which have been established to protect the Fifth and Sixth Amendment rights of juvenile suspects. The second issue, assuming that the police complied with the necessary procedures, is the more general question of the voluntariness under all of the circumstances.

In *Lewis* v. *State,* (1972) 259 Ind. 431, 288 N.E. 2d 138, this Court established the procedures to be followed during police interrogation of juvenile suspects. The Court stated:

"We hold therefore that a juvenile's statement or confession cannot be used against him at a subsequent trial or hearing unless both he and his parents or guardian were informed of his rights to an attorney, and to remain silent. Furthermore, the child must be given an opportunity to consult with his parents, guardian or an attorney representing the juvenile as to whether or not he wishes to waive those rights. After such consultation the child may waive his rights if he so chooses provided of course that there are no elements of coercion, force or inducement present. * * *." 259 Ind. at 439.

This procedure was elaborated in *Hall* v. *State,* (1976) 264 Ind. 448, 346 N.E.2d 584, where the Court stated:

"* * * The inquiry under *Lewis* does not cease when the mere presence of a parent or guardian has been established. The record must affirmatively demonstrate that the juvenile and his parent or guardian were afforded a meaningful opportunity to counsel together." 346 N.E.2d at 587.

Although the police failed to provide an opportunity for the defendant and his father to consult together at the inception of the interrogation, and although such consultation occurred only at the father's request, the opportunity to consult was afforded prior to the time that the incriminating statement was made. To the extent that the procedure followed was improper, it, nevertheless, produced no evidence and did no harm. Insofar as the police procedure was productive of evidence, it was in compliance with the rule established in *Lewis.*

*Lewis* required only that the defendant and his father be given a meaningful *opportunity* to consult together without State interference. Whether or not the opportunity was used to the defendant's advantage was beyond the police officers' control. They were in no position to dictate or even to recommend how the defendant and his

father spent the consultation time. Both had been properly advised of the defendant's constitutional rights, and there is no contention that they were not understood.

Perhaps the main thrust of the defendant's argument, if it had been more artfully directed, would be to the point that the father's influence upon the defendant detracted from the voluntariness of the waiver. Since the father was not acting in concert with the police, however, his advice to the defendant to tell the truth could not render the waiver involuntary. Cf. *Garrett* v. *State*, (1976) 265 Ind. 63, 351 N.E.2d 30. The constitutional guarantees which are embodied within the "voluntariness" test are directed against the infringement of individual liberties by the exploitation of individual weakness in the face of government action.

It affirmatively appears in the record that the defendant and his father were given a meaningful opportunity to discuss the advisability of waiving the right to remain silent and the right to counsel. The father's urging of the defendant to tell the truth, whatever the motivation, did not violate the requirements set forth in *Lewis, supra,* and did not render the waiver of rights involuntary.

Our constitutions provide certain rights for those restrained and suspected of criminal offenses, to protect them against unconscionable activity by the State in its quest to apprehend the guilty party. The State is required to respect those rights, to advise of them, and in the case of a juvenile suspect, to afford the juvenile and the mature person who, by nature, would have the best interest of the suspect uppermost in his thought, the opportunity to reflect upon the predicament before making what may be a critical decision. It does not, however, and cannot assume responsibility for the decision.

## ISSUE II

The defendant objected to the admission of certain photographs depicting the decedent's corpse, upon the grounds that

they were inflammatory and prejudicial. In order to prevail upon such an allegation of error on appeal, it is a fundamental prerequisite that the reviewing court be afforded the opportunity to see the photographs which are claimed to be objectionable. It is incumbent upon Appellant to present a sufficient record to present an intelligent review of the issues. *Bobbitt* v. *State,* (1977) 266 Ind. 164, 361 N.E.2d 1193; *Bledsoe* v. *State,* (1975) 263 Ind. 265, 329 N.E.2d 592; *Johnson* v. *State,* (1972) 258 Ind. 648, 283 N.E.2d 532. Here there is nothing to review.

The record and briefs are deficient in respect to this issue. The motion to correct errors and the brief refer only to the erroneous admission of "three photographs of the deceased offered by the State over objection of the defendant * * * ." and "* * * three photographs of the deceased depicting the wounds on his body after the fatal attack." Nowhere do we find a reference to the particular exhibits (photographs) complained of. The record consists of more than thirteen hundred pages, and the State introduced twenty-five exhibits, most of which appear to have been photographs. At no point in the brief has Appellant directed us to the specific photograph by exhibit or page number or to the page of the record where the objection and rulings might be found. Compounding the problem, none of the photographs in evidence are in the transcript. Rather, attempted office copier copies have been substituted. These attempted copies are unintelligible, mere streaks and blurs of black ink. Some are blank sheets of white paper. It is inconceivable that we could be expected to rule upon an issue so inadequately presented. The thrust of the defendant's argument upon this issue was that the photographs of the deceased's mutilated body, presumably in the condition that it was in when found by the authority, were irrelevant in view of the defendant's plea of not guilty by reason of insanity.

Although this Court has, upon a few occasions, reversed criminal convictions for admitting inflammatory and irrele-

vant photographs into evidence, *Kiefer* v. *State,* (1961) 239 Ind. 103, 153 N.E.2d 899, and, in others, has been critical of admitting gruesome photographs where the relevancy was but slight and the tendency to inflame was great, *Carroll* v. *State,* (1975) 263 Ind. 696, 338 N.E.2d 264; *Bates* v. *State,* (1977) 267 Ind. 8, 366 N.E.2d 659, we have never followed a policy of dictating the State's tactical policy of prosecution. Rather, the rule is one of relevance.

The photographs may well have been relevant, notwithstanding the insanity plea, which only added a factor to the State's burden and did not relieve it from the necessity of proving the corpus delicti, purpose, malice and premeditation.

## ISSUE III

The defendant moved to suppress any mention to the jury that two physicians who examined the defendant and testified concerning his sanity were court appointed. The motion was overruled, and Defendant argues that the jury was likely to afford greater weight to the physicians' testimony, knowing that they were appointed by the court. This argument is substantially similar to the contention considered and rejected in *Clay* v. *State,* (1976) 264 Ind. 495, 346 N.E.2d 574. In *Clay,* the court quoted from *Jessner* v. *State,* (1930) 202 Wis. 184, 231 N.W. 634:

"By the statute under consideration the legislature has deliberately attempted to regulate the subject of expert evidence in criminal trials, to the end that there may be some evidence in the case, not bought and paid for, coming from impartial witnesses who owe no duty or allegiance to either side of the controversy, and that *the fact of their impartiality shall be made known to the jury. * * * .*" (Emphasis added)

It is also noted that prior to presenting the court appointed witnesses, the court gave the jury the following admonition:

"Ladies and gentlemen, as you are aware the defendant in this matter, Paul T. Buchanan, has filed a special plea of insanity. And after that special plea of insanity was filed

and pursuant to statute, this Court appointed two (2) medical doctors to examine the defendant, concerning his sanity at the time of the alleged offense. These two (2) doctors are now going to testify. And the Court advises you at this time, that this procedure followed, and the fact these witnesses are going to be Court's witnesses, should not in anyway imply that this Court adopts any of their testimony. And the Court will later instruct you, that you the Jurors are the sole Judges of the credibility of all the witnesses, including Court appointed witnesses. With that admonition in mind, the Court now calls Doctor Frank Hogle."

### ISSUE IV

The State made a motion in limine to restrict the cross examination of Anthony Cox concerning his previous acts of misconduct. We have not been directed to the point in the transcript where either the motion or the ruling may be found, and our laborious search has revealed neither. Apparently, the motion was verbal, but we are not privy to the specific information it sought to conceal. Appellant, nevertheless, makes a very general argument "* * * that the refusal of the court to admit cross examination of Anthony Cox as to numerous specific acts of physical assault and theft constituted clear error."

Cox had participated in the slaying of Robert Schwartz and testified for the State in return for a plea agreement.

We have again turned to the record, in an effort to assure that the defendant not be deprived of a proper review upon the merits of his appeal. We have reviewed the testimony of the witness, and we find no significant restrictions imposed upon the cross examination, as indicated by the following:

"Q. Tony, would it be true when you have testified that generally you have had fights before that when not under the influence of drugs, you have used profanity towards a uniformed officer, that the type of profanity that would incite someone when you said it to them, and anger them and you have struck a uniformed officer?

"A. One time.

"Q. Now, would it be true that you, during the past two (2) or three (3) years before confinement, while not under the influence of drugs at that moment, when you weren't high, have been involved in such actions as Theft?

"A. Yes sir.

"Q. And during the last approximate two (2) years before the indictment, would it be true that these Thefts would involve such places as unoccupied homes, cars, where there was no human being?

"A. Yes.

"BY MR. CARAS: Objection, violation of the Court's order.

"BY THE COURT: I think we are going over."

Further, the jury had been apprised upon direct examination, of the witness' participation in the crime and of the plea bargain agreement.

We find no error. The judgment of the trial court is affirmed.

Givan, C.J., and DeBruler, Hunter and Pivarnik, JJ., concur.

NOTE.—Reported at 376 N.E.2d 1131.