**Todrei SANDERS, Appellant,**

v.

**STATE of Indiana, Appellee.**

No. 1080S385.

Supreme Court of Indiana.

Nov. 25, 1981.

24

Charles H. Graddick, Gary, for appellant.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendant, Todrei Sanders, was convicted of murder, Ind. Code § 35–42–1–1 (Burns Repl. 1979), at the conclusion of a jury trial in Porter Superior Court, Criminal Division, on May 12, 1980. Sanders was sentenced for a term of imprisonment of thirty-eight (38) years. His conviction and sentence is the subject of this appeal.

Five errors are asserted by defendant, concerning: 1) whether there was sufficient evidence upon which to base a murder conviction; 2) whether the trial court erred in denying defendant's motion to sequester the jury; 3) whether the trial court erred in denying defendant's motion for change of venue; 4) whether the trial court erred in denying defendant's motion for judgment on the evidence and motion for directed verdict; and 5) whether the prosecutor committed prosecutorial misconduct in his closing argument.

The evidence most favorable to the State reveals that on the evening of December 8, 1979, the decedent, Michael Spagoletti, and the defendant attended a party at the Phi Delta fraternity house on the campus of Valparaiso University. During the party, defendant and decedent began to argue. The two were separated by a friend of the defendant, who asked the defendant to wait outside and they would walk home together. Shortly thereafter, decedent went outside and a fight erupted between the two students. Defendant pulled out a knife and stabbed Spagoletti numerous times. The defendant fled to Detroit but later returned to Valparaiso where he was tried and convicted.

### I.

The first issue for our consideration concerns the sufficiency of the evidence. Defendant sought to establish that he acted in self-defense. Under Ind.Code § 35–41–3–2 (Burns Supp. 1981):

"[A] person is justified in using deadly force only if he reasonably believes that that force is necessary to prevent serious bodily injury to himself or a third person or the commission of a forcible felony."

Alternatively, he argues that he acted under sudden heat. Under Ind.Code § 35–42–1–3 (Burns Repl. 1979), this sudden heat, if established, would operate as a mitigating factor and would reduce to voluntary manslaughter what would otherwise be murder.

In examining a claim of insufficient evidence, this Court will neither reweigh the evidence nor judge the credibility of witnesses. To do so would usurp the jury's functions. We will determine only whether there is substantial evidence of probative value from which the jury could reasonably find the defendant guilty beyond a reasonable doubt. *Love v. State*, (1979) Ind., 393 N.E.2d 178, 180; *Pollard v. State*, (1979) Ind., 388 N.E.2d 496, 501; *Ruetz v. State*, (1978) 268 Ind. 42, 49, 373 N.E.2d 152, 156.

In the case before us, defendant Sanders acknowledges that it was he who stabbed and killed Spagoletti. However, he claims, as noted earlier, that the evidence also shows that he acted in self-defense, or alternatively, that he acted under sudden heat. Both of these defenses presented questions of fact for the jury to resolve. *See Harris v. State*, (1978) 269 Ind. 672, 382 N.E.2d 913; *Hester v. State*, (1978) 267 Ind. 697, 373 N.E.2d 141; *Robinson v. State*, (1962) 243 Ind. 192, 184 N.E.2d 16. In doing so, they were free to disbelieve defendant's testimony. *Hill v. State*, (1979) Ind. 394 N.E.2d 132, 135; *Taggart v. State*, (1979) Ind. 390 N.E.2d 657, 659; *Johnson v. State*, (1978) 268 Ind. 55, 56–57, 373 N.E.2d 169, 170.

Defendant testified in his own defense. On the night in question, defendant left his room with a knife strapped to his leg. He claimed he took the knife in order to slash the tires of a jeep. Earlier that evening, several people in a jeep drove past the defendant, called him a "nigger" and yelled other expressions, such as "Helter Skelter," at him. Defendant eventually arrived at the Phi Delta fraternity house where a party was taking place. Inside, he encountered the decedent, Michael Spagoletti, and the two men began to argue. Defendant was asked by his friend, Mike Murray, to wait outside and they would walk home together. According to defendant, once outside he noticed that the knife sheath strapped to his leg had slipped. He removed the knife, wrapped his hat around it, and placed it inside his pants. Then Spagoletti walked outside, approached the defendant, and began to wrestle with him. Defendant claims he was attacked first but the eyewitnesses were uncertain as to who started to throw the first punches, although Mike Murray said the first punch he saw thrown was by defendant. Defendant and the victim continued to struggle and then the two men fell into some bushes. Defendant then pulled out his knife and inflicted eighteen wounds upon Spagoletti. Three of the stab wounds were individually sufficient to cause death.

Before a person is justified in purposely killing an assailant in self-defense, he must believe that killing is necessary to

preserve his own life or to prevent great bodily harm. *Loyd v. State,* (1980) Ind. 398 N.E.2d 1260, 1264. The force used to repel an attack must be reasonable and may be used only in the belief that such degree of force is necessary to defend oneself. *Id.,* 398 N.E.2d at 1265; *White v. State,* (1912) 178 Ind. 317, 99 N.E. 417.

Defendant claims that he feared for his life since Spagoletti outweighed him, was taller, and had a reputation for fighting. There was some discrepancy as to the decedent's weight. Defendant testified that he weighed about 135 to 140 pounds and that the victim weighed 190 to 200 pounds. Officer Todd, who assisted in examining the body, said he thought the body weighed between 170 and 175 pounds. Neither side saw fit to include the exact weight in the record but it is safe to assume that Spagoletti was heavier than the defendant since that fact was never disputed. Mike Murray, one of the two eyewitnesses to the fight, said he allowed the fight to begin, stating, "I think Todrei [defendant Sanders] can take care of himself." Murray said the fight consisted mainly of both men holding on to each other's collars and rolling around before falling through the bushes. He said that he saw the defendant strike Spagoletti three times before they started moving around. Tom Delattre, the other eyewitness, said neither man seemed to be in control of the fight and all they did was wrestle. Murray claimed, however, as Spagoletti fell backward through the bushes that defendant had a knife in his hand and plunged it into Spagoletti. Both eyewitnesses stated that Spagoletti had no weapon in his hand or on his person.

■ Testimony at the trial revealed a long-standing animosity between Spagoletti and the defendant; however, that testimony also showed that the previous encounters had been shouting matches with no blows exchanged. There was no indication that the decedent intended to seriously harm the defendant or that he would use a weapon or such force that justified defendant's use of his knife. Even assuming that the defendant had been assaulted by Spagoletti and

feared for his safety, it was not unreasonable for the jury to find that he used excessive and vicious force in protecting himself.

■ Defendant also argues that if this court does not find that he was justified in using the force that was used, the conviction should be reduced to voluntary manslaughter because he acted under sudden heat. *See* Ind.Code § 35–42–1–3 (Burns Repl. 1979). Defendant was convicted under Ind. Code § 35–42–1–1 (Burns Repl. 1979) which defines murder, in part, as an act of knowingly and intelligently killing another human being. As noted above, there had been animosity between the two students for some time. Witnesses testified that defendant had warned Spagoletti to be careful and told him that "Detroit had a contract out on him." After he asked defendant to wait outside on the night of the murder, Mike Murray overheard defendant say "I got something for you" to Spagoletti. Because their animosity had existed for some time, and the men had exchanged taunts and threats, the jury could have reasonably found that a sufficient "cooling off" period had passed and, therefore, that defendant did not stab Spagoletti in a sudden heat. *See Hooks v. State,* (1980) Ind. 409 N.E.2d 618, 620. It is undisputed that defendant knew he had the knife at hand before Spagoletti went outside. Defendant said he switched the knife from his leg to inside his pants because the sheath slipped, but said on cross-examination that while he did not retie the sheath, it had not slipped even after rolling around on the ground. Defendant also said that he left the handle of the knife somewhat above the belt line of his pants. This fact tends to rebut defendant's "sudden heat" theory, and is evidence from which the jury could have concluded that defendant placed the knife there and planned to use it when Spagoletti came out. *Id.; see also Downs v. State,* (1977) 267 Ind. 342, 348, 369 N.E.2d 1079, 1082. We thus find substantial evidence of probative value from which the trier of fact could reasonably infer that defendant was guilty of murder beyond a reasonable doubt. *Bradberry v. State,* (1977) 266 Ind. 530, 538, 364

N.E.2d 1183, 1188; *Matthew v. State*, (1975) 263 Ind. 672, 674, 337 N.E.2d 821, 822.

## II.

Defendant next contends that his motion to sequester the jury, in light of the publicity about the case in local newspapers, was prejudicially and erroneously overruled by the trial court. Defendant specifically points out as harm that one juror listened to a sermon comparing the story of Cain and Abel with the murder of Spagoletti. However, the defendant, in his brief, mentions that the juror said he had not been influenced by the sermon; in addition, the defendant accepted the jury before the jury went into the jury room to deliberate. Further, no record has been preserved about the sermon incident nor has any record been preserved relative to any actual publicity which was printed or broadcast during the trial which the jurors might have encountered. Sequestration of a jury during trial is a matter of trial court discretion, and to demonstrate an abuse of this discretion the defendant must make some showing of prejudicial exposure of the jury to trial publicity. *Roberts v. State*, (1978) 268 Ind. 127, 131, 373 N.E.2d 1103, 1106; *Kincaid v. State*, (1976) 265 Ind. 345, 350, 354 N.E.2d 199, 203, *cert. denied*, (1977) 430 U.S. 972, 97 S.Ct. 1660, 52 L.Ed.2d 365; *Morris v. State*, (1975) 263 Ind. 370, 375, 332 N.E.2d 90, 93; *Wilson v. State*, (1966) 247 Ind. 454, 463, 217 N.E.2d 147, 152. There is no error here.

## III.

Defendant contends that this murder trial was a controversial issue in Porter County because it involved a black man accused of stabbing and killing a white man. He raises as his third argument that a change of venue should have been granted for two reasons: (1) adverse media coverage; and (2) probability of bias in the community. However, defendant has waived both of these issues.

First, defendant contends that approximately twenty-five (25) articles in the Post-Tribune newspaper and fifteen (15) articles in the Vidette Messenger created a prejudicial atmosphere both before and during the trial. Defendant has failed to present a sufficient record for review; therefore, this issue is without merit because there is nothing of substance before this court for the purpose of review. *Anderson v. State*, (1977) 267 Ind. 289, 299, 370 N.E.2d 318, 323, *cert. denied*, (1978) 434 U.S. 1079, 98 S.Ct. 1273, 55 L.Ed.2d 786; *Gurley v. State*, (1976) 264 Ind. 552, 557, 348 N.E.2d 16, 20; *Chatman v. State*, (1975) 263 Ind. 531, 549, 334 N.E.2d 673, 684. In order to prevail upon such an allegation of error, it is both necessary and fundamental that the reviewing court be afforded the opportunity to read the articles which are claimed to be prejudicial and damaging to defendant's right to a fair and impartial trial. *See Buchanan v. State*, (1978) 268 Ind. 503, 376 N.E.2d 1131.

As for the second reason, defendant Sanders states that the Porter County area is a basically white suburban community; therefore, he believes there was a high probability that wide-spread bias existed in the community prior to a single article being printed. However, this issue has also been waived because defendant failed to support his allegations with discernible argument and cited authority. *Millar v. State*, (1981) Ind. 417 N.E.2d 1105, 1107; *Bledsoe v. State*, (1980) Ind. 410 N.E.2d 1310, 1312. Defendant has simply presented us with an allegation with nothing presented in the record to back his argument. There is no trial court error here.

## IV.

Defendant assigns error to the trial judge's denial of his motion for judgment on the evidence at the close of the State's case in chief. Following the denial of this motion, defendant presented evidence in his defense. The introduction of any evidence following the denial of a motion for judgment on the evidence constitutes a waiver of any error in the overruling of the motion. *Miller v. State*, (1978) 267 Ind. 635, 640, 372 N.E.2d 1168, 1171; *Sypniewski v. State*,

(1977) 267 Ind. 224, 228, 368 N.E.2d 1359, 1362; *Parker v. State*, (1976) 265 Ind. 595, 601, 358 N.E.2d 110, 113.

It is also well established that a directed verdict is proper only: (1) where there is a total absence of evidence on a certain issue; or (2) where the evidence is without conflict and leads to only one inference, which is in favor of the accused. *Norton v. State*, (1980) Ind. 408 N.E.2d 514, 531; *Lyda v. State*, (1979) Ind. 395 N.E.2d 776, 778; *Mendez v. State*, (1977) 267 Ind. 67, 72, 367 N.E.2d 1081, 1084. Defendant claims that the evidence supports only that he acted either in self-defense or under sudden heat, in which case his conviction should be reduced to voluntary manslaughter. We have already dealt with these two defenses in part I and we believe that evidence was presented which negated defendant's claims; therefore, the motion for a directed verdict was properly denied. There is no error here.

### V.

Defendant's final argument deals with a claim of prosecutorial misconduct. The prosecutor, in the context of telling the jury about the defendant's background, referred to defendant Sanders as a black kid from Detroit in the State's closing statement. Defendant believes that this inflamed the jury against him.

Once again, the defendant has waived this issue because he failed to object to the statement and move for a mistrial. Defendant claims he did this on the basis of trial strategy rather than negligence. Whatever his reason may be, it is a waiver of error where the defendant does not move for a mistrial after the alleged improper remarks. *Norton v. State*, (1980) Ind. 408 N.E.2d 514, 529; *Lyda v. State*, (1979) Ind. 395 N.E.2d 776, 778.

The judgment of the trial court is affirmed.

GIVAN, C. J., and DeBRULER, HUNTER and PRENTICE, JJ.