Gary Wayne TAYLOR, Appellant (Defendant below),

v.

STATE of Indiana, Appellee (Plaintiff below).

No. 382S106.

Supreme Court of Indiana.

Aug. 9, 1982.

Samuel S. Shapiro, Applegate & Shapiro, Bloomington, for appellant.

Linley E. Pearson, Atty. Gen., Palmer K. Ward, Deputy Atty. Gen., Indianapolis, for appellee.

HUNTER, Justice.

The defendant, Gary Wayne Taylor, was convicted by a jury of robbery, a class A felony. Ind.Code § 35–42–5–1 (Burns 1979 Repl.). He was sentenced to a period of twenty years in the Indiana Department of Correction. In his direct appeal, he presents the following issues for our review:

(1) Whether the juvenile court erred in failing to grant defendant's motion to dismiss based on jurisdictional grounds;

(2) Whether the juvenile court erred by overruling defendant's objection to the presence of news media at the juvenile waiver hearing;

(3) Whether the juvenile court erred in admitting hearsay testimony at the waiver hearing;

(4) Whether the juvenile court erred by overruling defendant's objection designed to limit the use of his confession to the single purpose of determining the best interests of the state vis-a-vis the child's welfare; and

(5) Whether the trial court erred in overruling defendant's motion to suppress his tape-recorded confession for the reason that a valid waiver of juvenile rights had not occurred.

The record reveals that in the early morning hours of December 24, 1980, Albert Steward, age 79, and Viola Steward, age 82, were robbed of $4,000 in their home in Monroe County, Indiana; in the course of the robbery, both Stewards were severely beaten. The subsequent police investigation culminated in the arrest of five persons. Among them was the sixteen year old defendant and his uncle, with whom defendant then resided. Ultimately, defendant was waived from juvenile to adult court, where he was found guilty.

### I.

At the outset of the juvenile waiver hearing, defendant made a motion to dismiss the cause based on jurisdictional grounds. His motion was predicated on the bases that the formal prerequisites to the assumption of jurisdiction, as enunciated in *Duty v. State,* (1976) 169 Ind.App. 621, 349 N.E.2d 729, had not been satisfied.

In *Duty,* the court outlined the procedural prerequisites to the assumption of jurisdiction over a juvenile. A four-step process was delineated: (1) the filing of a petition requesting that a child be declared a delinquent; (2) a preliminary investigation into the home, environment, and personal history of the child, as well as the circumstances or incident which prompted the petition; (3)

a determination by the court that it will assume jurisdiction; and (4) the filing of a formal petition of delinquency, pursuant to the court's authorization. *Accord, Summers v. State,* (1967) 248 Ind. 551, 230 N.E.2d 320; *Seay v. State,* (1975) 167 Ind. App. 22, 337 N.E.2d 489.

■ The requirements are statutory in nature. Ind.Code § 31–6–4–7 and 9 (Burns 1980). As such, noncompliance with the procedural prerequisites precludes the assumption of jurisdiction over a juvenile. *Summers v. State, supra; Murphy v. State,* (1980) Ind.App., 408 N.E.2d 1311; *Duty v. State, supra; Seay v. State, supra; Ingram v. State,* (1974) 160 Ind.App. 188, 310 N.E.2d 903.

Defendant does not argue the various prerequisites were not discharged, or that the manner in which the requirements were discharged was somehow inadequate. Rather, defendant's claim of error is based on the fact that the juvenile court's order book did not contain entries which revealed the requirements had in fact been satisfied; to support his argument, he relies on the rule of law that a court speaks only through its official orders and entries. *Meehan v. Meehan,* (1981) Ind., 425 N.E.2d 157; *Blum's Lumber & Crating, Inc. v. James,* (1972) 259 Ind. 220, 285 N.E.2d 822.

The failure of the court's order book to reflect the fact that the procedural prerequisites had been satisfied was improper; at the hearing on defendant's motion to dismiss, however, defendant conceded the docket sheet reflected the fact that the requirements had been satisfied.

■ In these circumstances, the omissions in the order book, which apparently were the product of clerical oversight, cannot be characterized as reversible error. The purposes of the procedural requirements had been satisfied: the interests of the public and the juvenile had been evaluated and considered. The required documents had been filed; defendant and his mother were fully apprised of the matters therein. In this context the technical error of the court did not prejudice the substan-

tial rights of the defendant; the error was harmless. Ind.R.Ap.P. 15(E); Ind.Code § 35–1–47–9 (Burns 1979 Repl.); *North v. State*, (1980) Ind.App., 406 N.E.2d 657.

■ Defendant also predicates his claim of error on the trial court's subsequent *nunc pro tunc* amendment of the order book to reflect compliance with the procedural prerequisites. He concedes the docket entries reflecting that compliance were sufficient written memorabilia to support the *nunc pro tunc* amendment of the order book. *Russell v. State*, (1981) Ind.App., 428 N.E.2d 1271; *Huffman v. Huffman*, (1981) Ind. App., 424 N.E.2d 456. He argues, however, that the *nunc pro tunc* entry was improper in that the court failed to give notice to defendant that the entry was to be made.

It is true that *nunc pro tunc* entries may be made only after notice and the opportunity to be heard thereon has been provided to the parties. *Stowers v. State*, (1977) 266 Ind. 403, 363 N.E.2d 978; *Apple v. Greenfield Banking Co.*, (1971) 255 Ind. 602, 266 N.E.2d 13. Inasmuch as defendant concedes the *nunc pro tunc* entry was properly supported and that, as reflected in the docket entries, the procedural prerequisites had been satisfied, it is difficult to perceive any harm to defendant by virtue of the fact that notice and an opportunity to be heard were not provided. Nor has defendant explained the manner in which prejudice inured to him by virtue of the lack of notice. The trial court's error consequently cannot be said to require that defendant's conviction be reversed. Ind.R.Ap.P. 15(E); Ind. Code § 35–1–47–9, *supra; Blackburn v. State*, (1973) 260 Ind. 5, 291 N.E.2d 686.

## II.

Three days prior to the juvenile hearing, the Bloomington Herald-Telephone, a local newspaper, filed a written request with the court seeking access to the hearing. The following day, the court granted the request. Defendant maintains the juvenile court erred when it overruled his objection and permitted members of the local news media to attend the hearing; he argues the

court's action violated Ind.Code § 31–6–7–10 (Burns 1979 Repl.).

The statute reads in pertinent part:
"Sec. 10. (a) All proceedings in the juvenile court involving adults charged with:

"(1) contempt of court; or

"(2) criminal charges;

"shall be tried in open court.

"(b) The juvenile court shall determine whether the public should be excluded from other juvenile proceedings. In making that determination, the court shall consider that the best interests of the safety and welfare of the community are generally served by the public's ability to obtain information about:

"(1) the alleged commission of an act that would be murder or a felony if committed by an adult; or

(2) the alleged commission of an act that would be part of a pattern of less serious offenses.

"A copy of the public access or exclusion order shall be placed in the file of the proceedings."

The defendant specifically argues that the court committed reversible error when it failed to enter a copy of the access order in the record of the proceedings. He suggests the error reveals "a complete disregard for the balancing of interests" involved in the "delicate decision" at hand.

■ This Court has recognized that the issue whether the public and media representatives should be allowed access to a juvenile's records and court proceedings is a "sensitive" one. *State ex rel. Shelbyville Newspapers, Inc. v. Shelby Superior Court*, (1979) Ind., 396 N.E.2d 337, 340. Involved is a collision of significant public interests— the need to protect juveniles from the dissemination of information regarding minor offenses, as emphasized in *State ex rel. Shelbyville Newspapers, Inc. v. Shelby Superior Court, supra*, versus the extraordinary protections afforded by the constitutional guarantees of free speech and press. U.S.Const. amend. I; Ind.Const. art. 1, § 9.

The significance of the latter guarantees requires no lengthy discourse here. The historical bases of our constitutional guarantees of free speech and press have been repeatedly and extensively explained; the structural role and societal functions of unfettered and informed public debate have been recently and thoroughly detailed. *Richmond Newspapers, Inc. v. Commonwealth of Virginia*, (1980) 448 U.S. 555, 100 S.Ct. 2814, 65 L.Ed.2d 973; *see also, Smith v. Daily Mail Publishing Co.*, (1979) 443 U.S. 97, 99 S.Ct. 2667, 61 L.Ed.2d 399; *Nebraska Press Assoc. v. Stuart*, (1976) 427 U.S. 539, 96 S.Ct. 2791, 49 L.Ed.2d 683; *Sheppard v. Maxwell*, (1966) 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600; *Matter of Chase* (Fam.Ct. 1982) 112 Misc.2d 436, 446 N.Y.S.2d 1000. Often it has been recognized that the guarantees reflect and perpetuate the nation's profound commitment to the proposition that the integrity of public proceedings is preserved by public access thereto; concomitantly, it has been reiterated that the educative aspects of public exposure to the judicial process serve only to enhance public confidence in the system. *See, e.g., Nebraska Press Assoc. v. Stuart, supra; Sheppard v. Maxwell, supra; Estes v. Texas*, (1965) 381 U.S. 532, 85 S.Ct. 1628, 14 L.Ed.2d 543; *Maryland v. Baltimore Radio Show, Inc.*, (1950) 338 U.S. 912, 70 S.Ct. 252, 94 L.Ed. 562. This Court recognized the significance of these considerations in *Brown v. State*, (1969) 252 Ind. 161, 172–3, 247 N.E.2d 76, 83:

"The right of the news media to *fairly and accurately report* the news; *the right* of the defendant *to a fair trial before an impartial* tribunal free of the influence of generated prejudice and inflamed passion in the community; and the right of the citizens to fully *comprehend* and *analyze* the *portent* and *direction* of the administration of our court system are elements necessary to the attainment of justice. If any one of the rights fall, the rest also will surely fall, and the term 'justice' will become hollow and meaningless in our constitutional system. Upon the judiciary devolves the duty to maintain, as well as human agency can, the fine and essential balance within and between such tripartite rights, for such a harmonious weighting is necessary to the preservation of 'justice under the law.'" [Emphasis original.]

Complementary considerations were examined by Chief Justice Burger in *Richmond Newspapers, Inc. v. Commonwealth of Virginia, supra:*

"When a shocking crime occurs, a community reaction of outrage and public protest often follows. See H. Weihofen, The Urge to Punish 130–131 (1956). Thereafter the open processes of justice serve an important prophylactic purpose, providing an outlet for community concern, hostility, and emotion. Without an awareness that society's responses to criminal conduct are underway, natural human reactions of outrage and protest are frustrated and may manifest themselves in some form of vengeful 'self-help,' as indeed they did regularly in the activities of vigilante 'committees' on our frontiers.

\* \* \* \* \* \*

"People in an open society do not demand infallibility from their institutions, but it is difficult for them to accept what they are prohibited from observing. When a criminal trial is conducted in the open, there is at least an opportunity both for understanding the system in general and its workings in a particular case: ....." *Id.*, 448 U.S. at 571–2, 100 S.Ct. at 2824–5, 65 L.Ed.2d at 986.

Juxtaposed with these constitutionally-based considerations is the public policy that juveniles should be protected from the dissemination of information regarding their minor offenses. *Smith v. Daily Mail Publishing Co., supra; In re Gault*, (1967) 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527; *State ex rel. Shelbyville Newspapers, Inc. v. Shelby Superior Court, supra*. The social and philosophical underpinnings of the policy of confidentiality were elegantly summarized by Justice Rehnquist:

"It is a hallmark of our juvenile justice system in the United States that virtually

from its inception at the end of the last century its proceedings have been conducted outside of the public's full gaze and the youths brought before our juvenile courts have been shielded from publicity. This insistence on confidentiality is born of a tender concern for the welfare of the child, to hide his youthful errors and 'bury them in the graveyard of the forgotten past.' The prohibition of publication of a juvenile's name is designed to protect the young person from the stigma of his misconduct and is rooted in the principle that a court concerned with juvenile affairs serves as a rehabilitative and protective agency of the State. Publication of the names of juvenile offenders may seriously impair the rehabilitative goals of the juvenile justice system and handicap the youths' prospects for adjustment in society and acceptance by the public. This exposure brings undue embarrassment to the families of youthful offenders and may cause the juvenile to lose employment opportunities or provide the hardcore delinquent the kind of attention he seeks, thereby encouraging him to commit further antisocial acts. Such publicity also renders nugatory States' expungement laws, for a potential employer or any other person can retrieve the information the States seek to 'bury' simply by visiting the morgue of the local newspaper. The resultant widespread dissemination of a juvenile offender's name, therefore, may defeat the beneficent and rehabilitative purposes of a State's juvenile court system." *Smith v. Daily Mail Publishing Co., supra,* 443 U.S. at 107–8, 99 S.Ct. at 2673, 61 L.Ed.2d at 407–8 (Rehnquist, J., concurring in judgment [citations and footnotes omitted].

The state's interest in preserving the anonymity of juvenile offenders is one which the United States Supreme Court has characterized as "a matter of its own policy in the administration of criminal justice." *Davis v. Alaska,* (1974) 415 U.S. 308, 319, 94 S.Ct. 1105, 1112, 39 L.Ed.2d 347, 355.

■ Our General Assembly has established the policy and procedures governing the access or exclusion of the public from juvenile hearings. Ind.Code § 31–6–7–10, *supra.* The procedures accommodate the competing interests; inasmuch as those interests are of such significant import, we emphasize that our courts must strive to adhere strictly to the mandates of Ind.Code § 31–6–7–10, *supra,* both in form and substance; care and discernment should mark the court's approach to the balancing of interests, a matter which inherently requires a case-by-case analysis. *State ex rel. Shelbyville Newspapers, Inc. v. Shelby Superior Court, supra; Matter of Chase, supra.*

■ Here, the court failed to enter a copy of its access order in the record, as required by Ind.Code § 31–6–7–10, *supra.* The state maintains that notwithstanding the court's noncompliance with the statutory procedural requirement, the record reflects that the access order was made in accordance with the substantive requirements of the statute. It relies on the court's oral statement of its rationale made at the outset of the waiver hearing:

> "Let the record also note that there has been in this cause a request for the case to be made available to the media and after consideration as to the gravity of the offense, the age of the child, and all the statutory considerations for the opening of this matter to the public, the Court has determined that it is appropriate in this case."

We reject any implication that an oral statement satisfies the statutory requirement that a copy of the court's order be entered in the record. Reducing the ruling to written form insures that a careful examination of the competing interests has been made; a written order and enunciation of reasons therefor facilitates appellate review of the trial court's exercise of discretion.

We are not enamored of the general nature of the substantive rationale preferred by the court for its ruling. Nonetheless, the crime with which defendant was involved—robbery resulting in bodily injury—is a felony if committed by an adult. Con-

sequently, it fell within that class of proceedings for which access and disclosure are deemed generally to serve the best interests of the public. Ind.Code § 31–6–7–10(b), *supra.* Coupled with the fact that the crime was a grave one which involved the beating and robbery of elderly residents within the confines of their home, it cannot be said that the trial court abused its discretion in permitting public access to the hearing. *Id., State ex rel. Shelbyville Newspapers, Inc. v. Shelby Superior Court, supra; Matter of Chase, supra.*

It is noted that the state also has argued that defendant has failed to explain the manner in which he was prejudiced by the public and news media's access to his waiver hearing. It is true that defendant has not argued his fair trial rights were victimized by subsequent pretrial publicity, or that he was otherwise harmed. We reiterate, however, that the primary purpose of the juvenile access-exclusion rules is tangential to the juvenile-defendant's constitutional rights to a fair trial; it is, rather, the adverse impact on the potential rehabilitation of the juvenile which prompts the cloak of confidentiality. An error in that regard defies the express policy of the statutory scheme. Ind.Code § 31–6–1–1 (Burns 1980 Repl.). That concern demands judicious adherence to the provisions of Ind.Code § 31–6–7–10, *supra.*

### III.

Defendant maintains the juvenile court erred when it permitted the state to introduce hearsay testimony at the waiver hearing. Over defendant's objections, police officers were allowed to relate statements made by the victims, as well as to testify that a co-defendant had implicated the juvenile-defendant. Defendant asserts the introduction of the testimony violated his right to confront the witnesses against him.

To support his contention, defendant relies on constitutional precepts of juvenile law enunciated in *Kent v. United States,* (1966) 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84, and *Summers v. State,* (1967) 248 Ind. 551, 230 N.E.2d 320, together with the right of confrontation as expressed by statute. Ind.Code § 31–6–3–1 (Burns 1980 Repl.); Ind.Code § 31–6–4–13 (Burns 1980 Repl.). The state relies on *Clemons v. State,* (1974) 162 Ind.App. 50, 59, 317 N.E.2d 859, 865, wherein the Court of Appeals held that "fundamental fairness does not require the exclusion of hearsay in the waiver hearing setting." *But see, Simmons v. State,* (1978) Ind.App., 371 N.E.2d 1316 (hearsay rule applies in juvenile proceedings).

We do not reach the question whether hearsay evidence should be barred from juvenile waiver hearings; other circumstances are outcome-determinative. Significantly, defendant was charged with an offense which, if committed by an adult, is of class A felony status. Consequently, the state's petition to waive the defendant into the criminal justice system fell within the ambit of subsection "d" of Ind.Code § 31–6–2–4 (Burns 1980 Repl.), which reads:

"(d) Upon motion of the prosecutor and after full investigation and hearing, the juvenile court *shall waive jurisdiction* if it finds that:

"(1) the child is charged with an act that would be murder or a Class A or Class B felony if committed by an adult, except a felony defined by IC 35–48–4;

"(2) there is probable cause to believe that the child has committed the act; and

"(3) the child was sixteen (16) years of age or older when the act charged was allegedly committed;

"*unless* it would be in the best interests of the child and of the safety and welfare of the community for him to remain within the juvenile justice system." [Emphasis added.]

Assuming conditions 1, 2, and 3 of the statute are satisfied, the legislature has established a presumptive waiver unless it would be in the best interests of the juvenile and the community safety and welfare to retain the child with the juvenile system.

Here, the record of the waiver hearing establishes that the juvenile-defendant was charged with robbery resulting in bodi-

ly injury, a class A felony if committed by an adult. Ind.Code § 35–42–5–1 (Burns 1979 Repl.). The record includes a statement made by defendant to police officers. Admitted over his objection,[1] the statement included his confession that he had participated in the robbery of the Steward home on December 24, 1980. The record also reveals that the juvenile defendant was born on November 30, 1964, establishing that he had just passed his sixteenth birthday when the offense occurred. This evidence is sufficient to support the court's conclusion that the state had satisfied its burden to establish by a preponderance of the evidence that the conditions to a presumptive waiver were present. *Imel v. State*, (1976) 168 Ind.App. 384, 342 N.E.2d 897; *Cartwright v. State*, (1976) 168 Ind. App. 517, 344 N.E.2d 83. Inasmuch as it is not our prerogative to reweigh the evidence concerning the prosecutive merit of the charge, the admission of the hearsay testimony, even if improper, would not warrant reversal of the court's conclusion.

Furthermore, the court found that the juvenile defendant had failed to establish that it would be in his best interests, as well as the community's welfare and safety, to retain him within the juvenile system. In its waiver order, the court cited his past history of delinquent acts and his "inability or refusal to be rehabilitated through juvenile services" which had been provided to him, and found that in light of the nature of his instant involvement, he represented a threat to the safety and welfare of the community. These determinations supplement the conclusion that no reversible error could be exhibited here.

### IV.

■ Defendant maintains the juvenile court erred when it permitted his confession to be admitted for purposes other than determining the best interests of the juvenile and the community. He relies on *Clemons v. State, supra,* to support his contention.

In *Clemons,* the Court of Appeals stated:

"The juvenile's guilt or innocence is not at issue in a waiver hearing.

\* \* \* \* \* \*

"If the juvenile's confession is considered at all by the waiver hearing judge, it can only be considered as it relates to 'the child's welfare and the best interests of the state.'" *Id.,* 162 Ind.App. at 60–1, 317 N.E.2d at 866.

The rationale for the court's statement was predicated on the language of Ind.Code § 31–5–7–14 (Burns 1971), the statute then in effect.

Subsequent amendments to the statute, however, culminated in its repeal, effective October 1, 1979. Acts 1978, P.L. 136, §§ 57 & 58 p. 1286–7. In its stead, the General Assembly enacted Ind.Code § 31–6–2–4, *supra,* which has heretofore been quoted in relevant part. In order to waive a juvenile into the criminal justice system, the juvenile court is now expressly required to find that there is probable cause to believe he committed the offense charged. *Id.* That requirement does not demand a determination of guilt or innocence, but rather merely imposes the duty on the state to establish the prosecutive merit of its case. *Purcell v. State,* (1980) Ind.App., 406 N.E.2d 1255; *Bey v. State,* (1979) Ind.App., 385 N.E.2d 1153. Although the requirement consequently does not elevate the waiver hearing to one which is adjudicatory in nature, the enactment of Ind.Code § 31–6–2–4, *supra,* renders statements made by a juvenile admissible and probative on the elements necessary to a valid waiver—elements not required when *Clemons* was decided. There was no error here.

### V.

■ Defendant asserts that once he had been waived into the criminal justice system, the trial court erred in admitting his confession. He argues that the state failed to establish that his confession had been

---

1. Defendant's contention that the confession was improperly introduced is discussed at Is-

sues IV and V, *infra.*

preceded by a valid waiver of his rights, as required by Ind.Code § 31–6–7–3 (Burns 1980 Repl.). He specifically argues that his confession was not preceded by an opportunity to consult with a person who had no interest adverse to him. That requirement exists in subsection "a" of the statute, which reads:

"Sec. 3. (a) Any rights guaranteed to the child under the Constitution of the United States, the Constitution of Indiana, or any other law may be waived only:

"(1) by counsel retained or appointed to represent the child, if the child knowingly and voluntarily joins with the waiver; or

"(2) by the child's custodial parent, guardian, custodian, or guardian ad litem if:

"(A) that person knowingly and voluntarily waives the right;

"(B) *that person has no interest adverse to the child*;

"(C) meaningful consultation has occurred between that person and the child; and

"(D) the child knowingly and voluntarily joins with the waiver."

[Emphasis added.]

This Court has recently and repeatedly stated that the state bears a heavy burden to demonstrate that the opportunity for meaningful consultation, as embodied in the statute, has been satisfied. *Williams v. State*, (1982) Ind., 433 N.E.2d 769; *Garrett v. State*, (1976) 265 Ind. 63, 351 N.E.2d 30; *Lewis v. State*, (1972) 259 Ind. 431, 288 N.E.2d 138; *see also, Deckard v. State*, (1981) Ind.App., 425 N.E.2d 256. In *Buchanan v. State*, (1978) 268 Ind. 503, 507, 376 N.E.2d 1131, 1134, we stated:

"Our constitutions provide certain rights for those restrained and suspected of criminal offenses, to protect them against unconscionable activity by the State in its quest to apprehend the guilty party. *The State is required to respect those rights, to advise of them and, in the case of a juvenile suspect, to afford the juvenile and the mature person who, by nature, would have the best interest of the suspect uppermost in his thoughts*, the opportunity to reflect upon the predicament before making what may be a critical decision." [Emphasis added.]

Defendant relies on the emphasized language from Buchanan to support his claim. He maintains he was not provided the opportunity to consult with the person who had his best interests uppermost in mind.

The record reveals the juvenile defendant was provided with the opportunity to speak with his mother prior to waiving his rights and giving the statement. As defendant argues, however, the record also reveals that defendant had not resided with his mother for at least a year prior to his arrest. Instead, he had lived with his uncle, who was also arrested for the robbery at issue.

Defendant's mother and father had separated several years earlier. Mrs. Taylor conceded she had been unable to "handle" defendant when he had resided at her home; it was her opinion that defendant suffered from a lack of male supervision. After defendant had begun residing with his uncle (her brother), Mrs. Taylor stated she had continued to see him two to three times per month.

The record also reveals that prior to defendant's statement to police, defendant was provided with the opportunity to speak in privacy with his mother, who had been advised of the charges he was facing. Both were advised of the constitutional rights due defendant; both indicated they understood those rights. They refused a second opportunity to consult alone; a waiver of rights form was then signed by defendant and his mother.

Defendant's contention that his mother was not the proper person to act in consultation with him is largely predicated on his perception of their relationship. He testified that in his opinion, his mother did not care what happened to him; he also testified that he left home because he could not tolerate living with his mother and that he would have preferred the opportunity to consult with his father.

We reiterate our concern in *Buchanan* that the state should respect the rights of juveniles and strive to provide consultation with that person which, "by nature," would be concerned for the best interests of the juvenile. Here, the state was faced with a somewhat awkward situation, however. The adult with whom defendant had been residing for a year had also been arrested for the offense charged against defendant. While defendant had not resided with his mother during that time, the lapse in his residency with his father was of longer duration. In these circumstances, we are compelled to conclude that the state exercised adequate precaution to insure that defendant had the opportunity for meaningful consultation with a person who had no "interest" adverse to him. *Bluitt v. State,* (1978) 269 Ind. 438, 381 N.E.2d 458; *Burnett v. State,* (1978) 268 Ind. 618, 377 N.E.2d 1340.

Extreme cases of hostility between parent and child might render consultation between that parent and his child inadequate. We recognize, however, that the statutory language was also designed to insure that the consulting adult does not stand to benefit by cooperating with the police and encouraging the juvenile to act in a manner adverse to his interests. Hypothetically speaking, that might have been the case had defendant's uncle been permitted to consult with him, for the uncle had also been arrested for the crime and potentially would have held interests adverse to the juvenile defendant. As it is, however, we conclude defendant's right to meaningful consultation was satisfied.

For all the foregoing reasons, there was no reversible error in the juvenile and trial court proceedings and the judgment should be affirmed.

Judgment affirmed.

DeBRULER, PRENTICE and PIVARNIK, JJ., concur.

GIVAN, C. J., concurs in result.