**In the Matter of K.B. and B.L.,**

**Amanda Brooks Lay, Mother, Appellant,**

v.

**Department Of Child Services, Appellee.**

No. 82A03–0806–JV–266.

Court of Appeals of Indiana.

Oct. 10, 2008.

Erin L. Berger, Vanderburgh County Public Defender Agency, Evansville, IN, Attorney for Appellant.

Kimberly Nightingale, Department of Child Services Evansville, IN, Attorney for Appellee.

**OPINION**

BARNES, Judge.

**Case Summary**

Amanda Lay appeals the trial court's order granting the media access to K.B.'s and B.L.'s child in need of services ("CHINS") records. We reverse.

## Issue

Lay raises one issue, which we restate as whether the trial court properly allowed the media to access the children's CHINS records.

## Facts

On April 1, 2008, K.B.'s and B.L.'s three-year-old brother, K.L., died. On April 2, 2008, CHINS petitions were filed regarding K.B. and B.L. That same day, they were determined to be CHINS. On April 4, 2008, the State filed criminal charges against Lay and her husband, the children's father, Terry Lay, for K.L.'s death and K.B.'s and B.L.'s battery and neglect. On April 14, 2008, the trial court, apparently sua sponte and without notice or a hearing, issued an order granting the media access to K.B.'s and B.L.'s CHINS records. In its order, the trial court stated:

> In accordance with Indiana Code 31–39–2–10 the Court hereby grants access to any interested media representative to the chronological case summaries, petitions, motions and orders concerning the child in need of service causes 82D01–0804–J–92 [sic] and 82D01–0804–JC–093 which are the children of Amanda Lay. The Court further orders the children's names or other identifying information such as dates of birth or social security numbers are to remain confidential and not reported to the general public. Due to the graphic nature or identifying features in the photographs, the Court will not release the photographic evidence which was presented to the Court.
>
> The Vanderburgh Superior Court Juvenile Division has previously allowed media representatives to observe and report on child in need of service cases in September 2000 and May 2007. This limited access was granted to educate the public concerning these unique and

sometimes tragic cases. Due to our community's interest in the ongoing welfare of the Lay children, this Court is granting access to the media so the public will gain new insight into the workings of the Court and the Department of Child Services.

Appellant's App. p. 13.

On April 16, 2008, Lay filed a motion to correct error. Lay's motion included as an exhibit an April 15, 2008 article from the Evansville Courier & Press detailing the children's injuries and asserting that the trial court would allow media representatives to attend "hearings in his court room regarding the custody of the youngest children of Amanda Brooks [Lay] and Terry Lay, but the names of the children will not be made public." *Id.* at 17. On April 24, 2008, the trial court held a hearing on Lay's motion to correct error. The chronological case summary ("CCS") indicates that at the hearing the Vanderburgh Count Department of Child Services ("DCS") echoed Lay's concerns but left the decision to the trial court's discretion. The trial court denied Lay's motion to correct error. Lay now appeals.

## Analysis

■ Initially, we point out that the record in this case is not well-developed. This can be attributed in part to the fact that the trial court issued its order without notice to the parties and without conducting a hearing prior to issuing the order. In fact, there is no indication that any person actually requested access to the children's records. Further, at the hearing on Lay's motion to correct error, the DCS appears to have echoed Lay's concerns about releasing the records. Finally, because the order was issued less than two weeks after the investigation and resulting CHINS determination, an extensive record has not yet been developed. As far as we can tell, the heart of Lay's

complaint comes from the release of the "caseworker's report of preliminary inquiry & investigation," which was filed on April 2, 2008. Appellant's App. p. 18. This report is very detailed and was quoted at length in the April 15, 2008 newspaper article. It is on this limited record that we base our decision.

As to the merits, Lay claims that the trial court improperly released the children's CHINS records. When interpreting a statute, our goal is to determine and give effect to the intent of the legislature in promulgating it. *Porter Dev., LLC v. First Nat'l Bank of Valparaiso*, 866 N.E.2d 775, 778 (Ind.2007). "Our primary resource for this determination is the language used by the legislature, and thus our interpretation begins with an examination of the statute's language." *Id.* "We presume that the words of an enactment were selected and employed to express their common and ordinary meanings." *Id.* Where the statute is unambiguous, we will read each word and phrase in this plain, ordinary, and usual sense, without having to resort to rules of construction to decipher meanings. *Id.* The interpretation of a statute is an issue of law, which we consider de novo on appeal. *Id.*

■ We begin first with the release of the caseworker's report of preliminary inquiry and investigation. Indiana Code

Section 31–33–18–1(a), which specifically controls the investigation of child abuse and neglect, provides in part:

> Except as provided in section 1.5 [1] of this chapter, the following are confidential:
>
> (1) Reports made under this article (or IC 31–6–11 before its repeal).
>
> (2) Any other information obtained, reports written, or photographs taken concerning the reports in possession of:
>
> (A) the division of family resources;
>
> (B) the county office; or
>
> (C) the department.

Thus, pursuant to Indiana Code Section 31–33–18–1(a), the investigatory report and any other information obtained during the investigation of a report of child abuse or neglect is confidential.

The release of an investigatory report is governed by Indiana Code Section 31–33–18–2, which lists the limited persons to whom an investigatory report may be made available. This list does not include media representatives.[2] Given the specific language of this section, it is clear that the legislature intended to limit the persons who had access to these confidential reports. Accordingly, the investigatory re-

1. Indiana Code Section 31–33–18–1.5 applies to the disclosure of records pertaining to a child whose death or near fatality may have been the result of abuse, abandonment, or neglect. Although this section applies to K.L.'s death, it does not apply to the investigatory report of K.B. and B.L. because their cases do not involve a death or near fatality. *See* Ind.Code § 31–33–18–1.5(a); 42 U.S.C. 5106a(b)(4)(A) (defining "near fatality").

2. Indiana Code Section 31–33–18–2(9) does permit disclosure to a court upon the trial court's finding that access to the records may be necessary for determination of an issue before it. "However, ... access is limited to

in camera inspection unless the court determines that public disclosure of the information contained in the records is necessary for the resolution of an issue then pending before the court." I.C. § 31–33–18–2(9). Because the children had already been adjudicated CHINS it is unlikely that the report was necessary for the resolution of an issue pending before the court at the time it was released. It also appears that such reports should not as a matter of practice be included with court filings, but should only be included as part of the legal record upon a finding of necessity by the trial court.

port was confidential and should not have been made available to the public.

We now address Indiana Code Section 31–39–2–10, upon which the trial court relied when it released all of the records associated with K.B.'s and B.L.'s CHINS proceedings. We begin by considering Indiana Code 31–39–1, which pronounces the confidentiality of juvenile court records. This chapter applies to the legal records of the juvenile court except the records of an adult charged with a crime or criminal contempt and records involving a pregnant minor seeking a waiver of the written consent requirement before obtaining an abortion. I.C. § 31–39–1–1. Specifically, "All juvenile court records subject to this chapter are confidential and are available only in accordance with IC 31–39–2. The court shall take appropriate actions to protect juvenile court records governed by this chapter from unauthorized disclosure." I.C. § 31–39–1–2.

Indiana Code 31–39–2 describes the persons entitled to access juvenile court records and whether a court order is required to access such records. This chapter applies to "all records of the juvenile court" except records "involving an adult charged with a crime or criminal contempt of court" and records of a pregnant minor seeking a waiver of the written consent requirement before obtaining an abortion. I.C. § 31–39–2–1(a). "Legal records" include the CCS, index summaries, summonses, warrants, petitions, orders, motions, and decrees.[3] I.C. § 31–39–2–1(b).

Indiana Code Section 31–39–2–10 describes how "interested persons" may access records. This section provides:

(a) Subject to section 15 of this chapter, the juvenile court may grant any person having a legitimate interest in the work of the court or in a particular case access to the court's legal records. In exercising its discretion, the court shall consider that the best interests of the safety and welfare of the community are generally served by the public's ability to obtain information about:

(1) the alleged commission of an act that would be murder or a felony if committed by an adult; or

(2) the alleged commission of an act that would be part of a pattern of less serious offenses.

(b) A person having access to the records under this section is not bound by the confidentiality provisions of IC 31–39–1 and may disclose the contents of the records.

Ind.Code § 31–39–2–10.

Lay argues that the records should not have been disclosed because they involve an adult charged with a crime in the sense that Lay and her husband were charged as a result of their treatment of K.B. and B.L. *See* I.C. § 31–39–1–1(a)(1); I.C. § 31–39–2–1(a)(1). She also asserts that the language of Indiana Code Section 31–39–2–10(a)(1) "clearly and unambiguously" applies only to a pending juvenile delinquency case where murder or a felony is committed and does not apply to CHINS proceedings.[4] Appellant's Br. p. 6. Final-

---

**3.** The investigatory report that was disclosed to the media does not fit within any of these categories.

**4.** Given the specific language of the statute, we tend to agree with Lay's reading of Indiana Code Section 31–39–2–10(a)(1). However, we cannot ignore Indiana Code Section 31–39–2–8, which specifically ad-

dresses access to records of juvenile delinquency proceedings. Interestingly, in the context of a juvenile delinquency adjudication, our supreme court addressed the applicability of a statute with language similar to Indiana Code Section 31–39–2–10 and recognized the "sensitive" issue of allowing the public and the media to access a juvenile's records. *Taylor v. State*, 438 N.E.2d 275, 278

ly, Lay asserts that the children's records do not involve a pattern of less serious offenses and, therefore, the trial court should not have released the CHINS records. *See* I.C. § 31–39–2–10(a)(2).

We agree it is unclear under what circumstances the legislature intended any interested person to be able to access juvenile court records. We invite the legislature to clarify this ambiguity so as to ensure the confidentiality of legal records involving children. Nevertheless, we need not determine this issue today because even assuming that Indiana Code Section 31–39–2–10 applies to CHINS proceedings, we conclude that the trial court abused its discretion in disclosing K.B.'s and B.L.'s CHINS records.

In its order, the trial court stated that it was granting access to educate the public, to address the community's interest in the welfare of the children, and to give the public new insight into the workings of the trial court and the DCS. Citing similar reasons, the State concludes that the access order should stand based on "The community's renewed sense of interest in preventing child abuse and demand for the knowledge about child protection laws as a result of this case...." Appellee's Br. p. 8.

Although these are all laudable goals, they need not be achieved at the expense of K.B.'s and B.L.'s privacy interests. Most, if not all, CHINS proceedings allow an opportunity to inform the public about child abuse and neglect prevention and about the workings of our court system and the DCS. K.B. and B.L. are entitled to the same privacy and confidentiality that are offered to other children involved in less notorious CHINS proceedings. Pub-lic awareness—either about child abuse, our court system, or the DCS—does not warrant the disclosure of K.B.'s and B.L.'s CHINS records because awareness can be achieved by a variety of less intrusive measures.

We cannot overemphasize the extent of the tragedy these children have suffered. Such tragedy, however, is not a basis for putting their lives and the details of their misfortune under a public microscope. This is especially true when considering that the criminal charges against the children's parents and the CHINS proceedings remain unresolved. Because there is no specific ongoing threat to the safety or welfare of the community, the trial court abused its discretion in disclosing the children's CHINS records.

### Conclusion

The trial court abused its discretion when it disclosed K.B.'s and B.L.'s confidential CHINS records. We reverse.

Reversed.

FRIEDLANDER, J., and DARDEN, J., concur.

(Ind.1982), *cert. denied,* 459 U.S., 1149, 103 S.Ct. 793, 74 L.Ed.2d 998. Our supreme court stated, "Involved is a collision of significant public interests-the need to protect juveniles from the dissemination of information regarding minor offenses ... versus the extraordinary protections afforded by the constitutional guarantees of free speech and press." *Id.* (citing U.S. Const. amend. I; Ind. Const. art. 1, § 9).