**In the Matter of T.B., a Child Alleged to be a Child in Need of Services**

**Charity Bailey, Appellant,**

v.

**Indiana Newspapers, Inc., Appellee.**

**No. 49A02–0712–JV–1007.**

Court of Appeals of Indiana.

Oct. 21, 2008.

Ruth Johnson, Marion County Public Defender Agency, Indianapolis, IN, Attorney for Appellant.

Jan M. Carroll, Mark J. Crandley, Barnes & Thornburg LLP Indianapolis, IN, Attorneys for Appellee.

## OPINION

CRONE, Judge.

### Case Summary/Issues

In this appeal, Charity Bailey challenges several orders of the Marion Superior Court, Juvenile Division ("the juvenile court"), granting the release of various court and agency records to Indiana Newspapers, Inc., d/b/a The Indianapolis Star ("the Star"). The Star requested the release of these records following the death of Bailey's three-year-old daughter, T.B., who was alleged to have been neglected and murdered by Bailey and her boyfriend, Lawrence Green.

In considering Bailey's appeal, we address the following issues: (1) whether this Court has subject matter jurisdiction over Bailey's appeal; (2) whether Bailey's appeal should be dismissed as moot; (3) whether the juvenile court erred in releasing its records from a child-in-need-of-services ("CHINS") proceeding involving Bailey and T.B. that was pending at the time of T.B.'s death in November 2007, pursuant to Indiana Code Section 31–39–2–10; (4) whether the juvenile court erred in releasing a transcript of an August 2007 review hearing in that CHINS proceeding, pursuant to Indiana Code Section 31–32–6–2; (5) whether the juvenile court erred in releasing its records from a CHINS proceeding involving Bailey and T.B. that was closed in January 2006, pursuant to Indiana Code Section 31–39–2–10; (6) whether the juvenile court erred in releas-

ing its records from two juvenile delinquency proceedings involving Bailey, pursuant to Indiana Code Section 31–39–2–8; and (7) whether the juvenile court erred in releasing records from the Indiana Department of Child Services ("IDCS") and the Marion County Department of Child Services ("MCDCS") regarding T.B., pursuant to Indiana Code Section 31–33–18–1.5.

We resolve these issues as follows: (1) this Court does have subject matter jurisdiction over Bailey's appeal; (2) although Bailey's appeal is moot because the records at issue have already been released, we address its merits because it involves questions of great public interest that are likely to recur in a context that will continue to evade review; (3) the juvenile court did not err in releasing its records from the CHINS proceeding that was pending at the time of T.B.'s death pursuant to Indiana Code Section 31–39–2–10; (4) the juvenile court erred in releasing a transcript of the August 2007 review hearing pursuant to Indiana Code Section 31–32–6–2; (5) the juvenile court did not err in releasing its records from the CHINS proceeding that was closed in January 2006 pursuant to Indiana Code Section 31–39–2–10; (6) the juvenile court erred in releasing its records from Bailey's juvenile delinquency proceedings pursuant to Indiana Code Section 31–39–2–8; and (7) the juvenile court did not err in releasing IDCS and MCDCS records regarding T.B. pursuant to Indiana Code Section 31–33–18–1.5. Therefore, we affirm in part and reverse in part.

**Facts and Procedural History[1]**

For background purposes, we note that Indiana Code Chapter 31–34–1 defines the circumstances under which a child is considered a child in need of services. For example, Indiana Code Section 31–34–1–1 provides,

A child is a child in need of services if before the child becomes eighteen (18) years of age:

(1) the child's physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of the child's parent,[2] guardian, or custodian to supply the child with necessary food, clothing, shelter, medical care, education, or supervision; and

(2) the child needs care, treatment, or rehabilitation that:

(A) the child is not receiving; and

(B) is unlikely to be provided or accepted without the coercive intervention of the court.

The attorney for the county office of the Department of Child Services ("DCS") initiates a CHINS proceeding by requesting the juvenile court[3] to authorize the filing of a petition alleging that the child is a CHINS. Ind.Code § 31–34–9–1. The juvenile court must "[a]uthorize the filing of a petition if it finds probable cause to believe that the child is a" CHINS. Ind. Code § 31–34–9–2.

"Unless the allegations of a petition have been admitted, the juvenile court shall hold a factfinding hearing." Ind.Code § 31–34–11–1. If the court finds that a child is a CHINS, the court must enter

---

1. We have based our factual recitation on the facts found by the juvenile court in its various orders in this case. We have not relied on material contained in the released records that are at issue in this appeal.

2. A CHINS proceeding may involve more than one parent. We shall refer to "parent" in the singular for convenience's sake.

3. In this context, "juvenile court" refers to any court in Indiana with jurisdiction over juvenile proceedings.

judgment accordingly, order a predisposition report, and schedule a dispositional hearing to consider "[a]lternatives for the care, treatment, rehabilitation, or placement of the child" and the "necessity, nature, and extent" of the parent's participation "in the program of care, treatment, or rehabilitation for the child." Ind.Code §§ 31–34–11–2, 31–34–19–1. The juvenile court may enter a dispositional decree that, among other things, orders supervision of the child by the DCS or the IDCS; places the child in another home; and orders the child or the child's parent to receive family services. Ind.Code § 31–34–20–1.

In the case of a child under DCS or IDCS supervision, the juvenile court must hold a CHINS review hearing at least once every six months. Ind.Code § 31–34–21–2. Following a review hearing, the juvenile court must enter written findings and determine, among other things, "whether the child's case plan, services, and placement meet the special needs and best interests of the child"; whether the DCS or the IDCS has made reasonable efforts to provide family services; and "a projected date for the child's return home, the child's adoption placement, ... or the appointment of a legal guardian for the child[.]" Ind.Code § 31–34–21–5(a).[4]

The juvenile court must hold a permanency hearing at least once every twelve months after either the date of the original dispositional decree or the date the child was removed from her parent, whichever comes first. Ind.Code § 31–34–21–7(a). Indiana Code Section 31–34–21–7(d) provides,

There is a rebuttable presumption that [the juvenile court's] jurisdiction over

4. Indiana Code Section 31–34–21–5(b) provides that these determinations must be based on findings written after consideration of the following:

(1) Whether the [IDCS], the child, or the child's parent, guardian, or custodian has complied with the child's case plan.
(2) Written documentation containing descriptions of:
 (A) the family services that have been offered or provided to the child or the child's parent, guardian, or custodian;
 (B) the dates during which the family services were offered or provided; and
 (C) the outcome arising from offering or providing the family services.
(3) The extent of the efforts made by the [IDCS] to offer and provide family services.
(4) The extent to which the parent, guardian, or custodian has enhanced the ability to fulfill parental obligations.
(5) The extent to which the parent, guardian, or custodian has visited the child, including the reasons for infrequent visitation.
(6) The extent to which the parent, guardian, or custodian has cooperated with the [IDCS] or probation department.
(7) The child's recovery from any injuries suffered before removal.

(8) Whether any additional services are required for the child or the child's parent, guardian, or custodian and, if so, the nature of those services.
(9) The extent to which the child has been rehabilitated.
(10) If the child is placed out-of-home, whether the child is in the least restrictive, most family-like setting, and whether the child is placed close to the home of the child's parent, guardian, or custodian.
(11) The extent to which the causes for the child's out-of-home placement or supervision have been alleviated.
(12) Whether current placement or supervision by the [IDCS] should be continued.
(13) The extent to which the child's parent, guardian, or custodian has participated or has been given the opportunity to participate in case planning, periodic case reviews, dispositional reviews, placement of the child, and visitation.
(14) Whether the [IDCS] has made reasonable efforts to reunify or preserve a child's family unless reasonable efforts are not required under section 5.6 of this chapter.
(15) Whether it is an appropriate time to prepare or implement a permanency plan for the child under section 7.5 of this chapter.

the child in a [CHINS] proceeding continues for not longer than twelve (12) months after the date of the original dispositional decree or twelve (12) months after the [CHINS] was removed from the child's parent . . ., whichever occurs first. The [IDCS] may rebut the presumption and show that jurisdiction should continue by proving that the objectives of the dispositional decree have not been accomplished, that a continuation of the decree with or without any modifications is necessary, and that it is in the child's best interests for the court to maintain its jurisdiction over the child.

Following the permanency hearing, the juvenile court must make the findings and determinations required by Indiana Code Section 31–34–21–5; "consider the question of continued jurisdiction and whether the dispositional decree should be modified"; consider recommendations of certain persons, including the child's parent or other care provider; consult with the child, either in person or "through an interview with or written statement or report submitted by" the child's guardian ad litem or court-appointed special advocate, a DCS case manager, or "the person with whom the child is living and who has primary responsibility for the care and supervision of the child"; "consider and approve a permanency plan for the child" in accordance with statutory requirements;[5] "determine whether an existing permanency plan must be modified"; and "examine procedural safeguards used by the [IDCS] to protect parental rights." Ind.Code § 31–34–21–7(b). If the IDCS does not sustain its burden for continued jurisdiction, the court must either direct the IDCS to establish a permanency plan within thirty days or discharge the child and the child's parent. Ind.Code § 31–34–21–7(d).

As this brief overview illustrates, a CHINS proceeding involves many persons other than the child and his or her parent and generates hundreds of pages of documents—many of which may contain intimate details regarding the child and the child's family—prepared by court personnel and outside entities alike. With these principles in mind, we now turn to the relevant facts of this case, which are undisputed.

Bailey gave birth to T.B. on August 12, 2004. In November 2004, under cause number 49D09–0411–JC–1701, the MCDCS filed a petition alleging that T.B.

**5.** A permanency plan includes the following:

(1) The intended permanent or long term arrangements for care and custody of the child that may include any of the following arrangements that the court considers most appropriate and consistent with the best interests of the child:

(A) Return to or continuation of existing custodial care within the home of the child's parent, guardian, or custodian or placement of the child with the child's non-custodial parent.

(B) Initiation of a proceeding by the agency or appropriate person for termination of the parent-child relationship under IC 31–35.

(C) Placement of the child for adoption.

(D) Placement of the child with a responsible person . . . who is able and willing to act as the child's permanent custodian and carry out the responsibilities required by the permanency plan.

(E) Appointment of a legal guardian. . . .

(F) Placement of the child in another planned, permanent living arrangement.

(2) A time schedule for implementing the applicable provisions of the permanency plan.

(3) Provisions for temporary or interim arrangements for care and custody of the child, pending completion of implementation of the permanency plan.

(4) Other items required to be included in a case plan under IC 31–34–15 or federal law, consistent with the permanent or long term arrangements described by the permanency plan.

Ind.Code § 31–34–21–7.5(c).

was a CHINS. The juvenile court found that T.B. was a CHINS, and she was placed in foster care. Bailey " 'successfully completed services' " ordered by the juvenile court and was reunited with T.B. on January 19, 2006, when that CHINS case was closed. Appellant's App. at 170 (juvenile court's Jan. 3, 2008 order).[6]

In May 2006, under cause number 49D09–0605–JC–21830, the MCDCS filed another petition alleging that T.B. was a CHINS. The juvenile court again found that T.B. was a CHINS, and again she was placed in foster care. *Id.* T.B. was returned to Bailey's home in November 2007 and died on November 27, 2007, allegedly as a result of "multiple blunt force injuries." *Id.* at 140 (Dec. 6, 2007 order). Both Bailey and her boyfriend, Lawrence Green, were charged with neglecting and murdering T.B. At the time of T.B.'s death, a CHINS case was pending involving Bailey and Green's son, L.G., under cause number 49D09–0705–JC–19282.

At a previously scheduled review hearing on November 27, 2007, the juvenile court closed T.B.'s CHINS case because of her death. Also on that date, a reporter from the Star and a reporter from the Fox Channel 59 television station requested access to the juvenile court's records in that CHINS case. Tr. at 2.[7] On November 30, 2007, the juvenile court held a hearing on

the request, during which additional records were requested. The juvenile court reopened the CHINS case for the limited purpose of determining whether the requested records could be released. After the hearing, the court issued an order granting the Star and Fox Channel 59 access to redacted copies of its records in that CHINS case and setting a "hearing on the supplemental requests" for December 5, 2007. Appellant's App. at 122 (Nov. 30, 2007 order). At some point, the hearing was rescheduled for December 18, 2007.

On December 3, 2007, Bailey filed a notice of appeal from the juvenile court's order and a motion to stay the order pending appeal. On that date, this Court denied Bailey's motion to stay. On December 4, 2007, Bailey filed a motion to reconsider the juvenile court's order and a motion for expedited appeal. On December 6, 2007, the juvenile court denied Bailey's motion to reconsider.

Also on December 6, 2007, the juvenile court issued an order granting the Star access to redacted copies of records regarding T.B. that were held by IDCS and MCDCS. Bailey did not file a notice of appeal from that order.

On December 18, 2007, the juvenile court held a hearing on the Star's request for access to the following items: (1) juve-

---

**6.** The order does not cite the source of the quoted text.

**7.** In a filing dated November 29, 2007, the juvenile court noted that it had received an amended request for access to juvenile court records from a Star reporter that reads in pertinent part as follows:

> Judge Moores:
> I would like to request access to any and all juvenile court records you have pertaining to [T.B.] and CHINS cases that involved her.
> I believe there may be multiple CHINS cases with this child and want to make sure

> you consider releasing information from all such cases, as well as any other relevant court documents, at the hearing on Friday[, November 30].
> I also would like to request access to any and all juvenile court documents or records you have relating to [T.B.'s] mother, Charity Bailey.
> I realize you may not be able to consider this request regarding Charity Bailey at Friday's hearing, but wanted to get it before you.

Appellant's App. at 108.

nile court records from T.B.'s previous CHINS case; (2) juvenile court records from two juvenile delinquency proceedings involving Bailey; (3) a transcript of an August 2007 review hearing in T.B.'s pending CHINS case;[8] and (4) juvenile court records from the CHINS case involving L.G.

On December 19, 2007, this Court issued an order granting Bailey's motion for expedited appeal.

On January 3, 2007, the juvenile court issued an order denying the Star access to its records from the CHINS case involving L.G.[9] and granting the Star access to redacted copies of records from T.B.'s previous CHINS case and the juvenile delinquency proceedings involving Bailey. On January 16, 2008, Bailey filed a notice of appeal from that order.

On January 11, 2008, the juvenile court issued an order granting the Star access to the transcript of the August 2007 review hearing in T.B.'s pending CHINS case. On January 15, 2008, Bailey filed a notice of appeal from that order.

On February 15, 2008, Bailey filed a motion to consolidate proceedings—that is, T.B.'s pending CHINS proceeding and the CHINS proceeding involving L.G.—and requested that the appeal no longer be expedited. On February 26, 2008, this Court issued an order granting Bailey's motion to consolidate and vacating the expedited briefing schedule. The appeal was fully briefed as of July 31, 2008.

## Discussion and Decision

### I. Subject Matter Jurisdiction

■■ Before we consider Bailey's arguments, we address the potentially dis-positive issue of whether we have subject matter jurisdiction over her appeal. "Subject matter jurisdiction is the power to hear and determine cases of the general class to which any particular proceeding belongs." *K.S. v. State,* 849 N.E.2d 538, 540 (Ind.2006). The lack of appellate jurisdiction may be raised at any time, and if, as here, the parties do not question subject matter jurisdiction, the appellate court may consider the issue sua sponte. *Georgos v. Jackson,* 790 N.E.2d 448, 451 (Ind.2003). "[D]ismissal for lack of subject matter jurisdiction takes precedence over the determination of and action upon other substantive and procedural rights of the parties. Jurisdiction is a question of law we review *de novo.*" *Young v. Estate of Sweeney,* 808 N.E.2d 1217, 1219 (Ind.Ct. App.2004) (citation and quotation marks omitted).

Pursuant to Indiana Appellate Rule 5, this Court has jurisdiction over appeals from final judgments and appeals from interlocutory orders. Appellate Rule 2(H) states,

■■ A judgment is a final judgment if:

(1) it disposes of all claims as to all parties;

> (2) the trial court in writing expressly determines under Trial Rule 54(B) or Trial Rule 56(C) that there is no just reason for delay and in writing expressly directs the entry of judgment (i) under Trial Rule 54(B) as to fewer than all the claims or parties, or (ii) under Trial Rule 56(C) as to fewer than all the issues, claims or parties;
> (3) it is deemed final under Trial Rule 60(C);

---

**8.** According to the Star, the hearing "ultimately led to T.B.'s return to Bailey's home just weeks before her death." Appellee's Br. at 3.

**9.** The Star does not appeal this ruling, nor does it challenge any of the juvenile court's redactions of the released records.

(4) it is a ruling on either a mandatory or permissive Motion to Correct Error which was timely filed under Trial Rule 59 or Criminal Rule 16; or

(5) it is otherwise deemed final by law.

Appellate Rule 9(A)(1) states that "[a] party initiates an appeal by filing a Notice of Appeal with the trial court clerk within thirty (30) days after the entry of a Final Judgment." "Whether [an] order was a final judgment governs the appellate courts' subject matter jurisdiction, and unlike most contentions, lack of [subject matter] jurisdiction is not waived by the parties. Neither the parties nor the trial court can confer appellate jurisdiction over an order that is not appealable either as a final judgment or under Trial Rule 54(B)." *Georgos,* 790 N.E.2d at 451.

As mentioned above, Bailey filed several notices of appeal from the juvenile court's various orders. In the first notice of appeal, filed on December 3, 2007, Bailey characterized the juvenile court's November 30, 2007 order as a "final, appealable order." Appellant's App. at 1. This characterization was incorrect, in that the order did not "dispose[ ] of all claims as to all parties[,]" and the juvenile court did not "in writing expressly determine[ ] under Trial Rule 54(B)" that "there [was] no just reason for delay" and "in writing expressly direct the entry of judgment" under that rule "as to fewer than all the claims or parties." Ind. Appellate Rule 2(H).[10] In other words, the juvenile court's Novem-

ber 30, 2007 order was not a final judgment, but an interlocutory order.

Appellate Rule 5(B) states that this Court "shall have jurisdiction over appeals of interlocutory orders under Rule 14." Appellate Rule 14(A) states,

Appeals from the following interlocutory orders are taken as a matter of right by filing a Notice of Appeal with the trial court clerk within thirty (30) days of the entry of the interlocutory order:

(1) For the payment of money;

(2) To compel the execution of any document;

(3) To compel the delivery or assignment of any securities, evidence of debt, documents or things in action;

(4) For the sale or delivery of the possession of real property;

(5) Granting or refusing to grant, dissolving, or refusing to dissolve a preliminary injunction;

(6) Appointing or refusing to appoint a receiver, or revoking or refusing to revoke the appointment of a receiver;

(7) For a writ of habeas corpus not otherwise authorized to be taken directly to the Supreme Court;

(8) Transferring or refusing to transfer a case under Trial Rule 75; and

(9) Issued by an Administrative Agency that by statute is expressly required to be appealed as a mandatory interlocutory appeal.

The juvenile court's November 30, 2007 order meets none of these criteria.[11] Ap-

---

10. In fact, the juvenile court's November 30, 2007 order specifically states that an additional hearing would be held on the Star's "supplemental requests" for information. Appellant's App. at 122. Likewise, Bailey's notice of appeal acknowledges that the case "continues open for purposes of determining what public access shall be allowed." *Id.* at 1.

11. To the extent one might argue that the juvenile court's orders "compel the delivery of . . . documents" pursuant to Appellate Rule 14(A)(3), we believe that the rule applies only to documents held by persons or entities other than trial courts. *See Allstate Ins. Co. v. Scroghan,* 801 N.E.2d 191, 194 (Ind.Ct.App.2004) ("Rule 14(A)(3) pertains to the delivery of documents where delivery imports a surren-

pellate Rule 14(B) states that "[a]n appeal may be taken from other interlocutory orders if the trial court certifies its order and the Court of Appeals accepts jurisdiction over the appeal." Bailey did not request, and the juvenile court did not grant, certification of any orders in this case.[12] The only other potentially relevant portion of Appellate Rule 14 states that "[o]ther interlocutory appeals may be taken only as provided by statute." Ind. Appellate Rule 14(D). We are unaware of any statutes that would apply in this situation.

■ The remaining orders from which Bailey appealed suffer from similar deficiencies. Our review of the record, however, indicates that the juvenile court's January 11, 2008 order granting access to the transcript of the August 2007 review hearing in T.B.'s pending CHINS case "dispose[d] of all claims as to all parties" pursuant to Appellate Rule 2(H), in the sense that no issues regarding the Star's request for access to records remained pending at that point.[13] As such, we conclude that the juvenile court's January 11, 2008 order was a "final judgment" for purposes of Appellate Rules 2(H) and 5(A). *See Georgos*, 790 N.E.2d at 451 (stating that "a final judgment 'disposes of all issues as to all parties thereby ending the particular

case' " and "leaves nothing for further determination.") (citation omitted). Bailey timely filed a notice of appeal from that order, and therefore we have subject matter jurisdiction over Bailey's appeal as to that order.

What about the interlocutory orders? In *Bojrab v. Bojrab*, 810 N.E.2d 1008 (Ind. 2004), our supreme court reiterated that "[a] claimed error in an interlocutory order is not waived for failure to take an interlocutory appeal but may be raised on appeal from the final judgment." *Id.* at 1014 (citing *Georgos*, 790 N.E.2d at 452). Therefore, we will address the merits of Bailey's claims regarding the juvenile court's interlocutory orders.

## II. Mootness

■ Having addressed the jurisdictional question, we now consider the issue of mootness:

The long-standing rule in Indiana has been that a case is deemed moot when no effective relief can be rendered to the parties before the court. When a dispositive issue in a case has been resolved in such a way as to render it unnecessary to decide the question involved, the case will be dismissed.

der. Surrender may occur with such items as securities, receipts, deeds, leases, or promissory notes.") (citations and internal quotation marks omitted), *trans. denied.* Given that a trial court need not compel itself to surrender its own documents, we believe that Appellate Rule 14(A)(3) is inapplicable here.

12. *Cf.* Ind. Appellate Rule 14(B)(1) ("The trial court, in its discretion, upon motion by a party, may certify an interlocutory order to allow an immediate appeal.").

13. The juvenile court's January 3, 2008 order states,

The Court, recognizing that the Indianapolis Star would not know to what cases/causes its request for access might apply, ordered that unless and until it issued an

order granting access, that even the types and numbers of said cases would remain confidential, then advised the parties and counsel that to its knowledge the following cases/causes existed to which the request of the Indianapolis Star might apply:
1. Closed CHINS case involving [T.B.], Cause No. 49D09–0411–JC–0001701.
2. Open CHINS case involving [L.G.], Cause No. 49D09–0705–JC–19282.
3. Closed Juvenile Delinquency case involving Charity Bailey, Cause No. 49D09–0103–JD–001248; and
4. Closed Juvenile Delinquency case involving Charity Bailey, Cause No. 49D09–0405–JD–02133.
Appellant's App. at 165.

*DeSalle v. Gentry*, 818 N.E.2d 40, 48–49 (Ind.Ct.App.2004) (citation omitted). In this case, as Bailey acknowledges, the records at issue have already been "released and disseminated in the press[.]" Appellant's Br. at 22. Thus, even if we were to determine that the juvenile court erred in releasing the records, we could not render any effective relief to Bailey.

██ We may address the merits of a moot case, however, "if it involves questions of great public interest. Nevertheless, this public interest exception may only be invoked upon the existence of three elements: the issue concerns a question of great public importance which is likely to recur in a context which will continue to evade review." *DeSalle*, 818 N.E.2d at 49 (citation omitted). We believe—and the Star does not dispute—that the juvenile court's release of the records at issue involves questions of great public interest that are likely to recur in a context that will continue to evade review. Therefore, we shall address the merits of Bailey's appeal.

Before we do so, however, we must determine the proper standard of review. The juvenile court determined whether to release the records based on its interpretation of Administrative Rule 9 and various statutes in the Indiana Juvenile Code that govern public access to various records. Accordingly, Bailey contends that our review of the juvenile court's orders is strictly a matter of statutory interpretation, which is a question of law that we consider de novo. Appellant's Br. at 5 (citing *In re Guardianship of E.N.*, 877 N.E.2d 795, 798 (Ind.2007)).[14]

The Star asserts that Bailey is seeking "review of the mixed question of law and fact inherent in the juvenile court's application of the facts to the standards set out in the statutes controlling the release of juvenile records." Appellee's Br. at 5. The Star goes on to say that "[w]hile no cases have explicitly addressed the standard of review under these statutes, [this] Court has made clear that the abuse of discretion standard applies when the lower courts find facts and apply them to legal standards." *Id.* at 5–6 (citing *Daisy Farm Ltd. P'ship v. Morrolf*, 886 N.E.2d 604, 605 (Ind.Ct.App.2008), *trans. pending*, and *Garriott v. Peters*, 878 N.E.2d 431, 437 (Ind.Ct.App.2007), *trans. denied* (2008)); *see also Fraley v. Minger*, 829 N.E.2d 476, 482 (Ind.2005) ("Where cases present mixed issues of fact and law, we have described the review as applying an abuse of discretion standard.").

As mentioned above, however, the relevant facts of this case are undisputed. Therefore, to a significant extent, this appeal presents pure issues of law. *In re P.F.*, 849 N.E.2d 1220, 1224 (Ind.Ct.App. 2006).

Specifically, we must determine whether the trial court properly interpreted the relevant statute[s]. The construction and interpretation of statutes are questions of law that we review de novo. Thus, we give no deference to the trial court's interpretation and, instead, independently review the [statutes'] meaning and apply [them] to the facts of the case under review.

Our goal when interpreting a statute is to determine, give effect to, and implement the legislative intent underlying

---

14. Bailey also argues that "[i]f there is any ambiguity in a penal statute, the amendments [sic] must be construed strictly against the State." Appellant's Br. at 14 (citing *State v. Downey*, 770 N.E.2d 794, 797 (Ind.2002)). None of the statutes at issue are "penal," in that they do not "define[ ] an offense and prescribe[ ] its corresponding fine, penalty, or punishment." BLACK'S LAW DICTIONARY 1449 (8th ed.2004).

the statute and to construe the statute in such a way as to prevent absurdity and hardship and to favor public convenience. If a statute contains clear and unambiguous language, it is not subject to judicial interpretation. Rather, we must give such a statute its plain and clear meaning.

Although the language of the statute is our first, and often last, step in interpreting legislation, we must also consider how the statute interacts with other provisions in the same legislation. We must consider simultaneously the purpose of the statute and the repercussions of any interpretation. The intent underlying the provision as a whole controls over the strict literal meaning of any word or term.

*Id.* (citations and quotation marks omitted).

■■■ To the extent that a particular statute grants the juvenile court discretion in deciding whether to grant access to records, we review such a decision for an abuse of discretion. *See Hill v. Hill,* 863 N.E.2d 456, 462–63 (Ind.Ct.App.2007) (reviewing trial court's division of marital property pursuant to statute under abuse-of-discretion standard). "A trial court abuses its discretion when its decision is clearly against the logic and effect of the

facts and circumstances, or if it misinterprets the law." *Drees Co. v. Thompson,* 868 N.E.2d 32, 41 (Ind.Ct.App.2007), *trans. denied.*

## III. Release of Juvenile Court Records from T.B.'s Pending CHINS Proceeding

In its November 30, 2007 order, the juvenile court acknowledged that several administrative and statutory provisions governed its determination of whether to grant the Star's request for access to its records from the CHINS proceeding that was pending at the time of T.B.'s death. We begin our analysis with the comprehensive and voluminous Indiana Administrative Rule 9, entitled "Access to Court Records," which the Indiana Supreme Court first adopted in 1988. The rule reads in pertinent part as follows:

**(A) Scope and Purposes.**

(1) Pursuant to the inherent authority of the Indiana Supreme Court and pursuant to Indiana Code § 5–14–3–4(a)(8),[15] this rule governs public access to, and confidentiality of, court records. Except as otherwise provided by this rule, access to court records shall be governed by the Indiana Access to Public Records Act (Indiana Code § 5–14–3–1, et. seq.).[16]

---

**15.** Indiana Code Section 5–14–3–3(a) provides that "[a]ny person may inspect and copy the public records of any public agency during the regular business hours of the agency, except as provided in section 4 of this chapter." Indiana Code Section 5–14–3–4(a) lists twelve types of records that are "excepted from" this right to inspect and copy public agency records. Such records "may not be disclosed by a public agency, unless access to the records is specifically required by a state or federal statute or is ordered by a court under the rules of discovery." Ind.Code § 5–14–3–4(a). Among the listed records are "[t]hose declared confidential by state statute" and "[t]hose declared confidential by or

under rules adopted by the supreme court of Indiana." Ind.Code § 5–14–3–4(a)(1), -(8).

**16.** *See* Ind.Code § 5–14–3–1 ("A fundamental philosophy of the American constitutional form of representative government is that government is the servant of the people and not their master. Accordingly, it is the public policy of the state that all persons are entitled to full and complete information regarding the affairs of government and the official acts of those who represent them as public officials and employees. Providing persons with the information is an essential function of a representative government and an integral part of the routine duties of public officials and employees, whose duty it is to provide the

(2) The purposes of this rule are to:

(a) Promote accessibility to court records;

(b) Support the role of the judiciary;

(c) Promote governmental accountability;

(d) Contribute to public safety;

(e) Minimize the risk of injury to individuals;

(f) Protect individual privacy rights and interests;

(g) Protect proprietary business information;

(h) Minimize reluctance to use the court system;

(i) Make the most effective use of court and clerk of court staff;

(j) Provide excellent customer service; and

(k) Avoid unduly burdening the ongoing business of the judiciary.

(3) This rule applies only to court records as defined in this rule and does not authorize or prohibit access to information gathered, maintained, or stored by a non-judicial governmental agency or other entity.

(4) Disputes arising under this rule shall be determined in accordance with this and, to the extent not inconsistent with this rule, by all other rules of procedure, evidence, and appeal.

(5) This rule applies to all court records; however clerks and courts need not redact or restrict information that was otherwise public in case records and administrative records created before January 1, 2005.[17]

information. This chapter shall be liberally construed to implement this policy and place the burden of proof for the nondisclosure of a public record on the public agency that would deny access to the record and not on the person seeking to inspect and copy the record."). The Star's brief contains a lengthy dissertation in which it contends that it "has a presumptive right of access to judicial records as a matter of constitutional and common law" and notes that "[j]uvenile proceedings were not closed to the public at the time the Bill of Rights and the Indiana constitution were adopted." Appellee's Br. at 6, 11. Although we find this argument interesting and informative, we note that the Star does not specifically contend that any of the rules or statutes limiting access to the records at issue are unconstitutional, either on their face or as applied in this case. Likewise, although Bailey contends that the juvenile court's release of the records violated her due process rights, she does not specifically contend that any of the rules or statutes authorizing access to the records at issue are unconstitutional. Thus, the constitutionality of the rules and statutes governing access to the records at issue is not squarely before us today.

17. The commentary to section (A) reads in pertinent part as follows:

The objective of this rule is to provide maximum public accessibility to court records, taking into account public policy interests that are not always fully compatible with unrestricted access. The public policy interests listed above are in no particular order. This rule attempts to balance competing interests and recognizes that unrestricted access to certain information in court records could result in an unwarranted invasion of personal privacy or unduly increase the risk of injury to individuals and businesses. This rule recognizes there are strong societal reasons for allowing public access to court records and denial of access could compromise the judiciary's role in society, inhibit accountability, and endanger public safety.

This rule starts from the presumption of open public access to court records. In some circumstances[,] however, there may be sound reasons for restricting access to these records. This rule recognizes that there are times when access to information may lead to, or increase the risk of, harm to individuals. However, given the societal interests in access to court records, this rule also reflects the view that any restriction to access must be implemented in a manner tailored to serve the interests in open access. It is also important to remember that, generally, at least some of the parties in a court case are not in court voluntarily, but rather have been brought into court by plaintiffs or by the government. A person who is not a party to

**(B) Who Has Access Under This Rule.**

(1) All persons have access to court records as provided in this rule, except as provided in section (B)(2) of this rule.

(2) The following persons, in accordance with their functions within the judicial system, may have greater access to court records:

 (a) court, court agency or clerk of court employees:

 (b) private or governmental persons or entities who assist a court in providing court services:

 (c) public agencies whose access to court records is defined by other statutes, rules, orders or policies; and

 (d) the parties to a case or their lawyers with respect to their own case.[18]

**(C) Definitions. For purpose[s] of this rule:**

(1) "Court Record" means both case records and administrative records.

(2) "Case Record" means any document, information, data, or other item created, collected, received, or maintained by a court, court agency or clerk of court in connection with a particular case.

(3) "Administrative Record" means any document, information, data, or other item created, collected, received, or maintained by a court, court agency, or clerk of court pertaining to the administration of the judicial branch of government and not associated with any particular case.

(4) "Court" means the Indiana Supreme Court, Court of Appeals, Tax Court, and all Circuit, Superior, Probate, County, City, Town, or Small Claims Courts.

(5) "Clerk of Court" means the Clerk of the Indiana Supreme Court, Court of Appeals, and Tax Court, the Clerk of a Circuit, Superior, Probate, or County Court, the Clerk of a City or Town court, and the Clerk of a Marion County Small Claims Court, including staff.

(6) "Public access" means the process whereby a person may inspect and copy the information in a court record.

. . . .

**(D) General Access Rule.**

(1) A court record is accessible to the public except as provided in sections (G) and (H) of this rule, or as otherwise ordered sealed by the trial court.

(2) This rule applies to all court records, regardless of the manner of creation, method of collection, form of storage, or the form in which the record is maintained.

(3) If a court record, or portion thereof, [i]s excluded from public access, there shall be a publicly accessible indication

---

the action may also be mentioned in the court record. Care should be taken that the privacy rights and interests of such involuntary parties or 'third' persons are not unduly compromised.
Ind. Administrative Rule 9(A), cmt. (italics omitted).

18. The commentary to section (B) reads in pertinent part as follows:
 Subsection (B)(1) provides the general rule that all persons, including members of the general public, the media, and commercial and noncommercial entities, are entitled to the same basic level of access to court records. Access to court records is not deter-mined by who is seeking access or the purpose for seeking access, although some users, such as court employees or the parties to a particular case, may have greater access to those particular records than is afforded the general public.
 Subsection (B)(2) provides the exception to the general rule and specifies the entities and persons for whom courts may provide greater access. This greater level of access is a result of the need for effective management of the judicial system and the protection of the right to a fair trial.
Ind. Administrative Rule 9(B), cmt. (italics omitted).

of the fact of exclusion but not the content of the exclusion. This sub-section (3) does not apply to court proceedings or administrative records which are confidential pursuant to law.

. . . .

**(G) Court Records Excluded From Public Access**

(1) *Case records.* The following information in case records is excluded from public access and is confidential:

(a) Information that is excluded from public access pursuant to federal law;

(b) Information that is excluded from public access pursuant to Indiana statute or other court rule, including without limitation:

. . .

(vi) Records of juvenile proceedings, pursuant to Ind.Code § 31–39–1–2, except those specifically open under statute;

. . .

(c) Information excluded from public access by specific court order;

. . . .

(2) *Administrative records* [.] The following information in administrative records is excluded from public access and is confidential:

(a) All information excluded in subsections (a) through (h) of section (G)(1);

(b) Information that is excluded from public access to the extent provided by Indiana statute or other court rule, including without limitation: [list of fourteen items, including deliberative material such as "the work product of an attorney representing, pursuant to

state employment, or appointment, a public agency, the state, or an individual, pursuant to Ind.Code § 5–14–3–4(b)(2)"].

(3) Information in a case record that is otherwise excluded from public access may be made accessible if the information is declared by a court with jurisdiction over the case to be essential to the resolution of litigation, or, if the information is released by each person to whom such information pertains.[19]

**(H) Prohibiting Public Access to Information in Court Records.**

(1) A verified written request to prohibit public access to information in a court record[ ] may be made by any person affected by the release of the information. The request shall demonstrate that:

(a) The public interest will be substantially served by prohibiting access;

(b) Access or dissemination of the information will create a significant risk of substantial harm to the requestor, other persons or the general public;

(c) A substantial prejudicial effect to on-going proceedings cannot be avoided without prohibiting public access, or;

(d) The information should have been excluded from public access under section (G) of this rule.

The person seeking to prohibit access has the burden of providing notice to the parties and such other persons as the court may direct, providing proof of notice to the court or the reason why notice could not or should not be given,

---

19. The commentary to section (G) reads in pertinent part as follows:

In addition to deliberative material excluded under this rule, a court may exclude from public access materials generated or created by a court reporter with the exception of the official transcript.

Ind. Administrative Rule 9(G), cmt. (italics omitted).

demonstrating to the court the requestor's reasons for prohibiting access to the information. A party or person to whom notice is given shall have twenty (20) days from receiving notice to respond to the request.

(2) A court may deny a request to prohibit public access without a hearing. If the court does not initially deny the request, it shall post advance public notice of the hearing. A court may grant a request to prohibit public access following a hearing if the requestor demonstrates by clear and convincing evidence that any one or more of the requirements of (H)(1)(a) through (H)(1)(d) have been satisfied. An order prohibiting public access to information in a court record may be issued by the court having jurisdiction over the record....

(3) The court shall balance the public access interests served by this rule and the grounds demonstrated by the requestor. In its order, the court shall state its reasons for granting or denying the request. If the court prohibits access, it will use the least restrictive means and duration. When a request is made to prohibit public access to information in a court record at the time of case initiation, the request and the case information will remain confidential for a reasonable period of time until the court rules on the request. When a request is made to prohibit public access to information in court records that are already publicly accessible, the information may be rendered confidential for a reason-able period of time until the court rules on the request.

(4) This section does not limit the authority of a court to seal court records pursuant to Ind.Code § 5–14–3–5.5.[20]

**(I) Obtaining Access to Information Excluded from Public Access.**

(1) A verified written request to obtain access to information in a case or administrative record to which public access is prohibited under this Rule may be made by any person to the court having jurisdiction over the record. The request shall demonstrate that:

(a) Extraordinary circumstances exist which requires deviation from the general provisions of this rule;

(b) The public interest will be served by allowing access;

(c) Access or dissemination of the information creates no significant risk of substantial harm to any party, to third parties, or to the general public, and;

(d) The release of information creates no prejudicial effect to on-going proceedings, or;

(e) The information should not be excluded for public access under Section (G) of this Rule.

The person seeking access has the burden of providing notice to the parties and such other persons as the court may direct, providing proof of notice to the court or the reason why notice could not or should not be given, demonstrating to the court the requestor's reasons for prohibiting access to the information. A party or person to whom notice is given

---

**20.** The commentary to section (H) reads in pertinent part as follows:

This section is intended to address those extraordinary circumstances in which information that is otherwise publicly accessible is to be excluded from public access. This section generally incorporates a presumption of openness, and the need for demonstrating compelling grounds to overcome the presumption.

Parties should be aware that their request is not retroactive. Copies of the public record may have been disseminated prior to any request, and corrective action taken under the provisions of this rule will not affect those records.

Ind. Administrative Rule 9(H), cmt. (italics omitted).

shall have twenty (20) days from receiving notice to respond to the request. (2) A court may deny a request to provide access without a hearing. If the court does not initially deny the request, it shall post advance public notice of the hearing. A court may grant a request to allow access following a hearing if the requestor demonstrates by clear and convincing evidence that the requirements of (I)(1) have been satisfied. An order allowing public access to information excluded from public access may be issued by the court having jurisdiction over the record. An order permitting access to information excluded from public access in bulk or compiled records, or in records under the jurisdiction of multiple courts may be issued only by the Supreme Court. (3) A court shall consider the public access and the privacy interests served by this rule and the grounds demonstrated by the requestor. In its order, the court shall state its reasons for granting or denying the request[.] When a request is made for access to information excluded from public access, the information will remain confidential while the court rules on the request. (4) A court may place restrictions on the use or dissemination of the information to preserve confidentiality.[21]

Ind. Administrative Rule 9.

As stated above, Administrative Rule 9 provides that records of juvenile proceedings, such as a CHINS proceeding, are excluded from public access and are confidential pursuant to Indiana Code Section 31–39–1–2, "except those specifically open under statute[.]" Ind. Administrative Rule 9(G)(1)(b)(vi). Indiana Code Section 31–39–1–2 states, "All juvenile court records *subject to this chapter* are confidential and are available only in accordance with IC 31–39–2. The court shall take appropriate actions to protect juvenile court records governed by this chapter from unauthorized disclosure." (Emphasis added.) The "legal records subject to" Indiana Code Chapter 31–39–1 "include the following: (1) Chronological case summaries. (2) Index entries. (3) Summonses. (4) Warrants. (5) Petitions. (6) Orders. (7) Motions. (8) Decrees." Ind. Code § 31–39–1–1(b).[22]

Indiana Code Section 31–39–2–10 states,

(a) Subject to section 15 of this chapter, the juvenile court may grant any person having a legitimate interest in the work of the court or in a particular case access to the court's legal records. In exercising its discretion, the court shall consider that the best interests of the safety and welfare of the community are generally served by the public's ability to obtain information about:

(1) the alleged commission of an act that would be murder or a felony if committed by an adult; or

---

**21.** The commentary to section (I) reads in pertinent part as follows:

This section is intended to address those extraordinary circumstances in which confidential information or information which is otherwise excluded from public access is to be included in a release of information. In some circumstances, the nature of the information contained in a record and the restrictions placed on the accessibility of the information contained in that record may be governed by federal or state law. This section is not intended to modify or overrule

any federal or state law governing such records or the process for releasing information.

Ind. Administrative Rule 9(I), cmt. (italics omitted). Bailey asserts that the procedures outlined in section (I) "were not followed in this case" but makes no specific claims of error in this regard. Appellant's Br. at 17.

**22.** Indiana Code Chapter 31–39–2 contains an identical provision. *See* Ind.Code § 31–39–2–1(b).

(2) the alleged commission of an act that would be part of a pattern of less serious offenses.

(b) A person having access to the records under this section is not bound by the confidentiality provisions of IC 31–39–1 and may disclose the contents of the records.

Indiana Code Section 31–39–2–15 states, "A person who is at least eighteen (18) years of age may waive the restrictions on access to the person's records if the person does so in writing, stating the terms of the person's waiver."

In its November 30, 2007 order, the juvenile court recited many of the foregoing provisions and made the following findings:

11. The Court finds that the requesting entities, (the Indianapolis Star and Fox 59) are persons having a legitimate interest in a particular case, to-wit: *In Re: [T.B.], Cause No. 49D09–0605–JC–021830*, which is informing the public of the facts, circumstances, events, and proceedings which led up to and include the tragic death of said minor child while in the care of her mother, just hours before a scheduled court hearing.

12. The court further finds that the public is concerned about and has a legitimate and compelling interest in cases involving children who are found to be victims of abuse or neglect.

13. The court further finds that the access to the Court's records in the instant case could and should increase public awareness of the critical problems faced by juvenile courts and child welfare agencies in matters involving child protection and the struggle to achieve the delicate balance between preserving families and protecting children from abuse.

14. The Court further finds that access to the Court's records in the instant case may increase public confidence in the conduct of such proceedings, by lifting the veil of secrecy which has surrounded them.

15. On the other hand, the Court recognizes that Respondent Mother Charity Bailey has a legitimate expectation of confidentiality in said records, based on the presumption of confidentiality of same conferred by Ind.Code § 31–39–1–2.

16. However, the Respondent Mother Charity Bailey despite asserting that her constitutional right to a fair trial has failed to specifically articulate and demonstrate how granting access to the court's records in the instant case will impair her right to due process in the open CHINS case regarding her living child, or will negatively impact her right to a full and fair trial in the related criminal case, or otherwise injure or harm her.

17. Thus, in balancing these competing interests, the court in its discretion, finds that the requesting parties demonstrate a more compelling interest in obtaining access to the Court's records in the case, than does Respondent Mother Charity Bailey in seeking to prevent same.

18. The Court therefore finds that access to [the] court's records in the above captioned matter should be granted to the requesting parties, pursuant to Ind. Code 31–39–2–10 and that they are not bound by the confidentiality provisions of IC 31–39–1 and may disclose the contents of the records.

19. Because the case records here at issue are "(vi) Records of juvenile proceedings, pursuant to Ind.Code § 31–39–1–2, except those specifically open under statute", they are considered records ex-

cluded from access under Administrative Rule 9.[23]

20. Nevertheless, in keeping with the spirit embodied by and in the various statutes in the juvenile code concerning records, the Court is redacting from its records to which it is granting access, the "identifying information" as defined in Ind.Code 31–33–18–1.5(c).[24]

**IT IS THEREFORE ORDERED, ADJUDGED AND DECREED** access to the (1) Chronological case summaries, (2) Index entries; (3) Summonses; (4) Warrants; (5) Petitions; (6) Orders; (7) Motions; and (8) Decrees in the Court's records in [the] above-captioned matter is granted to the requesting parties.

Appellant's App. at 121–22.

At this point, we pause to observe that none of the juvenile court's orders and neither of the parties' briefs cite Indiana Code Section 31–39–1–1, which provides that the confidentiality provisions of Indiana Code Chapter 31–39–1

[apply] to all records of the juvenile court *except the following:*

(1) *Records involving an adult charged with a crime or criminal contempt of court.*

(2) Records involving a pregnant minor or her physician seeking a waiver of the [statutory requirement] that a

physician who performs an abortion on an unemancipated minor first obtain the written consent of the minor's parent or guardian.

Ind.Code § 31–39–1–1(a) (emphases added).[25] Given that Bailey, an adult, had been charged with neglecting and murdering T.B. prior to the first hearing on the Star's request for access to records,[26] we are surprised that neither the parties nor the juvenile court spotted the threshold issue of whether and to what extent the requested records fall within the ambit of Indiana Code Section 31–39–1–1(a)(1). Since the records have already been released, it would be a futile exercise to step into the juvenile court's shoes and pore over the hundreds of documents to make such a determination at this stage of the proceedings. Nonetheless, we think it prudent to provide guidance to juvenile courts in future cases as to what constitutes "[r]ecords involving an adult charged with a crime" for purposes of Indiana Code Section 31–39–1–1(a)(1).

Although that particular phrase is somewhat ambiguous and broad, we believe that the legislative intent behind it is unmistakably clear and narrow: to ensure that the confidentiality provisions of Indiana Code Section 31–39–1–2 do not impede the State's investigation and prosecution of the "adult charged with a

**23.** This finding is internally inconsistent, in that the juvenile court had already determined that the records at issue were "specifically open" under Indiana Code Section 31–39–2–10. The court's January 3, 2008 order contains identical language. *See* Appellant's App. at 171 (finding 21). Bailey does not specifically challenge these inconsistencies, however.

**24.** By their own terms, the redaction provisions of Indiana Code Section 31–33–18–1.5 do not apply to records held by a juvenile court. *See* Ind.Code § 31–33–18–1.5(a) (stating that statute applies to records held by certain entities, not including juvenile courts).

The court's January 3, 2008 order contains identical language. *See* Appellant's App. at 171 (finding 22). Because the Star does not challenge the juvenile court's redactions, however, we do not address this further.

**25.** Indiana Code Chapter 31–39–2 contains an identical provision. *See* Ind.Code § 31–39–2–1(a).

**26.** *See* Tr. at 17 (Bailey's public defender: "Ms. Bailey has been charged in a criminal matter. She is facing the possibility of life without parole.").

crime[.]" As such, we believe that Indiana Code Section 31–39–1–1(a)(1) applies only to those juvenile court records that relate specifically to both the adult and the charged crime. To conclude otherwise would be to subvert the confidentiality provisions of Indiana Code Section 31–39–1–2 and to convert Indiana Code Section 31–39–1–1(a)(1) into a fishing license for prosecutors and the public alike.[27]

Shifting our focus to Bailey's arguments, her primary contention is that the juvenile court's release of the records in T.B.'s pending CHINS case violated what she characterizes as her "inherent due process right to a trial free of prejudicial pretrial publicity." Appellant's Br. at 11. We acknowledge that Bailey's contention has some persuasive force, but we find it to be purely speculative and dismissive of the ample procedural safeguards at her disposal, such as voir dire and change of venue, to ensure that she would receive a trial by an impartial jury in her prosecution for T.B.'s death in a subsequent criminal proceeding. In light of these considerations, we conclude that Bailey's due process claims are not ripe for adjudication.[28] *See Ind. Dep't of Envtl. Mgmt. v. Chem. Waste Mgmt., Inc.*, 643 N.E.2d 331, 336 (Ind. 1994) ("Ripeness relates to the degree to which the defined issues in a case are based on actual facts rather than on abstract possibilities, and are capable of being adjudicated on an adequately developed record."); *see also Brown v. State*, 563 N.E.2d 103, 105 (Ind.1990) (in challenging denial of motion for change of venue, appellant must show "evidence of pretrial publicity sufficient to create community bias or prejudice," as well as "establish that the potential jurors were unable to set aside their preconceived notions of guilt and render a verdict based upon the evidence").

On the more pertinent issue of statutory interpretation, Bailey makes the following arguments: (1) Indiana Code Section 31–39–2–10 applies only to records in a pending case in which murder or a felony is committed by a juvenile, not to records "pertaining to an adult respondent in a CHINS action"; and (2) a juvenile court may not release records pursuant to Indiana Code Section 31–39–2–10 "without the waiver of the former juvenile, now an adult" pursuant to Indiana Code Section 31–39–2–15. Appellant's Br. at 16.[29] We disagree with both contentions.

Although Indiana Code Section 31–39–2–10 is inartfully drafted, to be sure, the plain language of the statute indicates that it is not limited to pending cases. *See Vasquez v. Phillips*, 843 N.E.2d 61, 63 (Ind.Ct.App.2006) ("It is just as important to recognize what [a] statute does not say as it is to recognize what it does say."). In fact, Indiana Code Section 31–39–2–10 specifically contemplates the release of court records in closed cases, in that the waiver provisions of Indiana Code Section 31–39–2–15 apply only to those who are no longer juveniles. It is clear to

---

**27.** For example, we believe that the legislature could not have intended for Indiana Code 31–39–1–1(a)(1) to apply to a dispositional order in a CHINS proceeding in which an adult charged with embezzlement is mentioned only in passing.

**28.** Nevertheless, we believe that juvenile courts would be well advised to consider that the release of records in a CHINS proceeding could result in significant expenditures of scarce judicial and economic resources to protect a parent's constitutional right to a fair trial in a subsequent criminal proceeding.

**29.** Aside from the transcript of the August 2007 CHINS review hearing, Bailey makes no specific claims of error regarding individual documents released by the juvenile court. Consequently, we confine our analysis to each set of records as a whole.

us that the reference to criminal activity in Indiana Code Section 31–39–2–10 is merely intended to offer additional guidance to a juvenile court in determining whether to release records in certain cases, rather than as a limitation on the cases to which the statute applies. In short, we conclude that the statute applies to both closed and pending cases and to both CHINS and juvenile delinquency cases.[30]

■ It is equally clear to us that Indiana Code Section 31–39–2–15 does not govern whether a juvenile court may release records pursuant to Indiana Code Section 31–39–2–10. If that were the case, a juvenile court would have no discretion to exercise in determining whether to grant access to its records, because the terms of the person's waiver would control. As the Star succinctly puts it, "Had the General Assembly intended to require a juvenile court to obtain an individual's consent before ordering the release of records, it would have simply said so." Appellee's Br. at 15 (footnote omitted); *see also Schrenger v. Caesars Indiana*, 825 N.E.2d 879, 881 (Ind.Ct.App.2005) (stating that "[e]very word" of a statute "must be given effect and meaning where possible,

and no part is to be held meaningless if it can be reconciled with the rest of the statute."), *trans. denied; Capehart v. Capehart*, 771 N.E.2d 657, 661 (Ind.Ct. App.2002) ("Statutes relating to the same general subject matter are in pari materia and should be construed together so as to produce a harmonious statutory scheme.") (citation omitted).

■ Bailey also contends that the Star's interest in T.B.'s pending CHINS case is not "legitimate" for purposes of Indiana Code Section 31–39–2–10, characterizing it as "a self-serving desire to increase circulation and readership" and "pandering to the prurient interests of the public." Appellant's Br. at 11, 12. We agree with the juvenile court's assessment that the death of any child is a matter "of the keenest public interest . . . and especially when the child is ostensibly under the auspices of the state." Appellant's App. at 121. We further agree with the juvenile court that the Star has a "legitimate interest" in informing the public of the facts surrounding the death of T.B. "while in the care of her mother, just hours before a scheduled court hearing." *Id.* at 122.[31] Therefore, we affirm the

---

**30.** That said, we disagree with the Star's contention that the additional guidance offered in Indiana Code Section 31–39–2–10 "sweeps within its scope not only crimes committed *by* juveniles, but crimes committed *against* juveniles." Appellee's Br. at 14. A commonsense reading of the statute indicates that the murder or felony mentioned therein must be committed by the juvenile—hence the use of the phrase "if committed by an adult," used throughout the Juvenile Code—whose records are the subject of the request for access. Also, we respectfully disagree with our colleagues' suggestion in a recent opinion that Indiana Code Section 31–39–2–10 applies only to pending juvenile delinquency cases in which a murder or a felony is committed and does not apply to CHINS proceedings. *Matter of K.B.*, 894 N.E.2d 1013, 1017, n. 4 (Ind. Ct.App. Oct.10, 2008). We observe that

Indiana Code Section 31–39–2–8 specifically addresses public access to records of juvenile delinquency proceedings, whereas Indiana Code Section 31–39–2–10 is not specifically limited to such proceedings. Nevertheless, we share our colleagues' concerns regarding the statute's lack of clarity.

**31.** Bailey further contends that

[i]f the media had requested access to several cases with the identifying information from each case kept confidential to conduct a study of domestic violence patterns, then the media would have been acting in the public interest. However, here the media went after a specific individual in a specific case to continue to keep the case in the headlines, pandering to the prurient interests of the public. This is not a legitimate First Amendment goal.

juvenile court's November 30, 2007 order releasing redacted copies of its records in T.B.'s pending CHINS case.

### IV. Release of Transcript of August 2007 Review Hearing in Pending CHINS Case

 The juvenile court's January 11, 2008 order granting the Star access to the transcript of the August 2007 review hearing in T.B.'s pending CHINS case reads in pertinent part as follows:

And the Court being duly advised in the premises thereof, now finds:

1. In drafting the Juvenile Code, it seems clear [the] Indiana General Assembly drew a distinction between a "proceeding"—the actual conducting of a hearing or a trial by the court and "records" of the juvenile court.

2. Ind.Code § 31–39–2–1 *et seq.* govern access to records of the juvenile court.

3. Ind.Code § 31–32–6–1 *et seq.* govern whether proceedings before the juvenile court are open to the public.

4. Unlike Ind.Code § 31–39–2–1 *et seq.* governing records, which specify to which records of the juvenile court access may be granted to which persons, Ind.Code § 31–32–6–2 provides that with regard to proceedings, "the juvenile court shall determine whether the public should be excluded from a proceeding other than a juvenile proceeding described in section 3 of this chapter["] (which provides that juvenile delinquency proceedings involving allegations that a child has committed an act that would be murder or a felony if committed by an adult shall be open to the public).

5. Thus, the Juvenile Court has discretion as to whether the public should be excluded from juvenile proceedings other than those involving delinquency petitions which allege that a child has committed an act that would be murder or a felony if committed by an adult, which must be open to the public and Respondent Charity Bailey is in error in her assertion that there exists a presumption that a juvenile proceeding is presumptively closed to the public.

6. A transcript is nothing more than a written verbatim reflection of the testimony and evidence in particular proceedings and therefore [the Court] finds that the appropriate analysis is with regard to access to a proceeding, and not access to a record of the juvenile court.

7. While the case law interpreting access to juvenile proceedings and juvenile court records recognize[s] the issue is a "sensitive one", *Taylor v. State,* 438 N.E.2d 275, 278 (Ind.1982) cert. denied 459 U.S. 1149, 103 S.Ct. 793, 74 L.Ed.2d 998 (1983) citing, *State ex rel. Shelbyville Newspapers, Inc. v. Shelby Superior Court,* 272 Ind. 42, 396 N.E.2d 337, 340 ([Ind.] 1979) it seems clear that the protections from dissemination of information discussed are almost exclusively that of the juveniles involved in the cases—not the adults. ("It is the hallmark of our juvenile system in

---

Appellant's Br. at 12. Bailey's contention is meritless. The Star correctly points out that Indiana Code Section 31–39–2–10 authorizes the release of records to *"any person* having a legitimate interest in the work of the court or *in a particular case* [.]" (Emphases added.)

the United States that virtually from its inception at the end of the last century its proceedings have been conducted outside of the public's gaze and the youths brought before our juvenile courts have been shielded from publicity. This insistence on confidentiality is born of a tender concern for the welfare of the child, to hide his youthful errors and 'bury them in [the] graveyard of the forgotten past.'" (emphasis added [sic [32]]) *Smith v. Daily Mail Publishing Co.*, (1979) 443 U.S. 97, 107–8, 99 S.Ct. at 2673, 61 L.Ed.2d at 407–8). In fact, the Indiana Juvenile Code makes clear that in cases over which the juvenile court has jurisdiction, but which involve only adults, those proceedings must be open. *See Ind.Code § 31–32–6–1.*

8. In the instant case, the child who is the subject of the proceedings for which access to a specific hearing in the case is sought was tragically killed[.] She can suffer no greater insult by the granting of access to the proceeding.

9. Moreover, the Supreme Court of Indiana has found that the access exclusion statutes are tangential to a juvenile respondent's constitutional right to a fair trial, but are instead founded on the potential adverse effect on the potential rehabilitation of the juvenile which prompts the cloak of confidentiality. *Taylor v. State, supra.* The Court can find no case which deals with the parent's right to a fair criminal trial with access to CHINS proceedings in which the parent was a party.

32. The order contains no italicized emphasis.

10. Nevertheless, the Court must balance the interests of Charity Bailey, mother of the child killed and a party to the proceeding with the interests of granting access to the public through its news media. ("The right of the news media to fairly and accurately report the news; the right of the defendant to a fair trial before an impartial tribunal free of the influence of generated prejudice and inflamed passion in the community; [and] the right of citizens to fully comprehend and analyze the portent and direction of the administration of our court system are elements necessary to the attainment of justice. If any one of the rights falls, the rest [also] will surely fall and the term 'justice' will become hollow and meaningless in our constitutional system. Upon the judiciary devolves the duty to maintain, as well as human agency can, the fine and essential balance within and between such tri[-]partite rights, for such a harmonious weighing is necessary to the preservation of [']justice under the law.[']" *Brown v. State,* 252 Ind. 161, 247 N.E.2d 76, [82–]83 (Ind.1969).)

11. In striking this delicate balance between the competing interests, Chief Justice Warren Burger, far more eloquently than can this Court noted, "When a shocking crime occurs, a community reaction of outrage and public protest often follows. (citation omitted). Thereafter, the open processes of justice serve an important outlet for community concern, hostility, and emotion. Without awareness that society's responses to criminal conduct

are underway, natural reactions of outrage and protest are frustrated and may manifest themselves in some form of vengeful self-help, as indeed they did regularly in the activities of vigilante committees on our frontiers. People in an open society do not demand infallibility from their institutions, but it is difficult for them to accept what they are prohibited from observing. When a [criminal] trial is conducted in the open, there is at least an opportunity both for understanding the system in general and its workings in a particular case...." *Richmond Newspapers, Inc., v. Commonwealth of Virginia*, 448 U.S. 555, 571–72 100 S.Ct. [2814], 28[2]4–25 65 L.Ed.2d 973, 986 (1980).

12. Respondent Charity Bailey's assertions that "release of these records will impact the criminal proceedings against respondent Bailey and since there are also two (sic) living children that will also be forever impacted by the release of these records the potential harm of their release outweighs the benefits of public access" and "the court cannot ignore the impact that release of this record will have on respondent Bailey's criminal trial" are supported only by broad claims of potential dilution of the presumption of innocence the right to a fair and impartial jury, without citation to how access to this specific proceeding (or transcript thereof) would affect same.

13. The Court therefore finds that the interests of the open processes of justice outweigh the interests of Respondent Mother Charity Bailey and grants access to requesting party, Indianapolis Star, to procure a transcript of the hearing held in the instant cause on August 30, 2007.

IT IS THEREFORE ORDERED, AD-JUDGED AND DECREED access to transcript of the hearing held in the instant cause on August 30, 2007 is GRANTED to the requesting party, Indianapolis Star.

Appellant's App. at 175–77 (footnote omitted).

Bailey contends that the juvenile court erred in releasing the transcript pursuant to Indiana Code Section 31–32–6–2. We agree.

To reiterate, Indiana Code Section 31–32–6–2 provides that "[t]he juvenile court shall determine whether the public should be excluded from a proceeding other than" juvenile delinquency proceedings involving murder or felony allegations, which are presumptively open to the public pursuant to Indiana Code Section 31–32–6–3.[33] For purposes of Indiana Code Section 31–32–6–2, we believe that a "proceeding" is an actual hearing or trial, not a transcript of the hearing or trial; if the legislature had intended otherwise, it easily could have said so. *See Slater v. Marion County Dep't of Child Servs.*, 865 N.E.2d 1043, 1047 (Ind.Ct.App.2007) ("[A]n appellate court must construe a statute according to its plain meaning. Words and phrases shall be taken in their plain, ordinary and usual sense unless a different purpose is manifested by the statute itself. This is

---

**33.** *Cf.* Ind.Code § 31–32–6–4 (authorizing juvenile court to close proceeding on motion from certain parties if it finds that "(1) an allegation or a defense involves matters of a sexual nature; and (2) closing the proceeding is necessary to protect the welfare of a child witness or child victim.").

the cardinal rule of statutory construction.") (citations omitted). Moreover, Indiana Code Section 31–32–6–2 clearly does not say that a juvenile court may release a transcript of a proceeding—such as the August 2007 review hearing—from which the public was excluded.[34] As such, we conclude that the juvenile court erred in releasing the transcript of the August 2007 review hearing pursuant to Indiana Code Section 31–32–6–2, and therefore we reverse the court's January 11, 2008 order.[35]

### V. Release of Juvenile Court Records from T.B.'s Closed CHINS Proceeding

 In its January 3, 2008 order, the juvenile court granted the Star access to records of the CHINS proceeding involving T.B. that was closed after she was reunified with Bailey in January 2006. The order reads in pertinent part as follows:

11. Counsel for Charity Bailey argued that while the Court's records pertaining to the earlier CHINS case involving [T.B.] and to [L.G.] might certainly be considered "newsworthy", that did not necessarily render access to the records a "legitimate public interest," citing *Nobles v. Cartwright*, 659 N.E.2d 1064, 1074–1075 (Ind.Ct.App.1995). *Cartwright, supra*, involved a civil case where plaintiff claimed an invasion of privacy by public disclosure of private facts, specifically details of a private extramarital affair. Plaintiff claimed that

the disclosure by defendants of the details of a private extramarital affair added nothing to the already newsworthy events. However, the Indiana Court of Appeals held in [*Cartwright*], that once a matter was found to be within the sphere of public interest, otherwise private facts about a person may also be considered of legitimate public interest if those particular facts are sufficiently relate[d] to the matter that is of legitimate public concern.

*Id.* The Court finds that the private facts [ ] contained in the Court's records are sufficiently related to the matter that is of legitimate public interest.

12. The Court finds that the requesting entity, the Indianapolis Star is a person having a legitimate interest in a particular case, to-wit: *In Re: [T.B.], Cause No. 49D09–0411–JC–0001701*, which legitimate interest is informing the public of the facts, circumstances, events, and proceedings of a previous CHINS case, where following the initial removal of the child from Mother on November 22, 2004, that the Mother Charity Bailey "successfully completed services" and that she and her child, [T.B.] were reunified and the case closed on January 19, 2006, which reunification occurred only four (4) months before May 26, 2006 when [T.B.] was again removed from her mother's care and again placed in foster care, a case which pended up to and

---

**34.** Bailey asserts that the August 2007 review hearing was "closed to the public." Appellant's Br. at 8. The Star does not dispute this assertion.

**35.** We leave for another day the question of whether the transcript of a juvenile proceeding is a "legal record" pursuant to Indiana Code Section 31–39–1–1(b) and therefore confidential pursuant to Indiana Code Section 31–39–1–2. Likewise, we refrain from decid-

ing whether the transcript is a "record[ ] involving an adult charged with a crime" pursuant to Indiana Code Section 31–39–1–1(a)(1) and therefore not confidential pursuant to Indiana Code Section 31–39–1–2. Finally, assuming for argument's sake that the transcript is confidential, we decline to reach the issue of whether the juvenile court could have released it pursuant to another statute, such as Indiana Code Section 31–39–2–10.

including the tragic death of said minor child while in the care of her mother.

13. The court further finds that the public is concerned about and has a legitimate and compelling interest in cases involving children who are found to be victims of abuse and neglect.

14. The court further finds that [ ] the access to the Court's records in the instant case could and should increase public awareness of the critical problems faced by juvenile courts and child welfare agencies in matters involving child protection and the struggle to achieve the delicate balance between preserving families and protecting children from abuse.

15. The Court further finds that access to the Court's records in the instant case may increase public confidence in the conduct of such proceedings, by lifting the veil of secrecy which has surrounded them.

16. On the other hand, the Court recognizes that Respondent Mother Charity Bailey has a legitimate expectation of confidentiality in said records, based on the presumption of confidentiality of same conferred by Ind.Code § 31–39–1–2.

17. However, the Respondent Mother Charity Bailey despite asserting that her constitutional right to a fair trial has again failed to specifically articulate and demonstrate how granting access to the court's records in the instant case will impair her right to due process or will negatively impact her right to a full and fair trial in the related criminal case, or otherwise injure or harm her.

18. Moreover, the Court finds that the overwhelming interest in privacy protected by the general confidentiality of CHINS cases, is that of the child/children, and not that of the parents. In the instant case, [T.B.'s] tragic and premature death has extinguished the consideration for her privacy.

19. Thus, in balancing these compelling interests, the court in its discretion, finds that the requesting party demonstrates a more compelling interest in obtaining access to the Court's records in the case, than does Respondent Mother Charity Bailey in seeking to prevent same.

20. The Court therefore finds that access to [the] court's records in the above encaptioned matter should be granted to the requesting party, pursuant to Ind. Code 31–39–2–10 and that it is not bound by the confidentiality provisions of IC 31–39–1 and may disclose the contents of the records.

21. Because the case records here at issue are "(vi) Records of juvenile proceedings, pursuant to Ind.Code § 31–39–1–2, except those specifically open under statute", they are considered records excluded from access under Administrative Rule 9.

22. Nevertheless, in keeping with the spirit embodied by and in the various statutes in the juvenile code concerning records, the Court is redacting from its records to which it is granting access, the "identifying information" as defined in Ind.Code 31–33–18–1.5(c)[.]

Appellant's App. at 170–71.[36]

On appeal, Bailey reiterates her argument that the records of the closed CHINS case are "not relevant to any current public interest." Appellant's Br. at 18. Bailey further contends that Indiana Code Section 31–39–2–10 applies only to

---

**36.** Because neither the juvenile court's order nor the parties' briefs discuss whether and to what extent the records of the closed CHINS proceeding fall within the scope of Indiana Code Section 31–39–1–1(a)(1), we do not address that issue.

pending cases and "does not contemplate the release of a court's file pertaining to an adult respondent in a CHINS case." *Id.*

We cannot agree. In light of T.B.'s death during the pending CHINS proceeding, which we have already determined to be a "legitimate interest" for purposes of Indiana Code Section 31–39–2–10, her prior involvement in the child welfare system is undoubtedly of equal interest and import. We have already observed that Indiana Code Section 31–39–2–10 is not limited to pending cases. Finally, we believe that Indiana Code Section 31–39–2–10 also contemplates the release of court records regarding an adult respondent in a CHINS case, given that practically all CHINS cases involve an adult respondent. As such, we affirm that portion of the juvenile court's January 3, 2008 order releasing redacted copies of its records in the closed CHINS proceeding pursuant to Indiana Code Section 31–39–2–10.

### VI. Release of Juvenile Court Records from Bailey's Juvenile Delinquency Proceedings

■ In its January 3, 2008 order, the juvenile court also granted the Star access to its records in two juvenile delinquency proceedings involving Bailey. The order states in relevant part,

27. Ind.Code § 31–39–2–8 governs public access to records of juvenile delinquency proceedings and provides:

"(a) The records of the juvenile court are available without a court order to the public, subject to the restrictions in subsections (b) and (c), whenever a petition has been filed alleging that a child is delinquent as a result of any of the following alleged acts or combination of alleged acts:

(1) An act that would be murder or a felony if committed by an adult.

(2) An aggregate of two (2) unrelated acts that would be misdemeanors if committed by an adult if the child was at least twelve (12) years of age when the acts were committed.

(3) An aggregate of five (5) unrelated acts that would be misdemeanors if committed by an adult if the child was less than twelve (12) years of age when the acts were committed.

(b) Only the following information or documents may be released under this section:

(1) The child's name.

(2) The child's age.

(3) The nature of the offense.

(4) Chronological case summaries.

(5) Index entries.

(6) Summonses.

(7) Warrants.

(8) Petitions.

(9) Orders.

(10) Motions, excluding:

(A) motions concerning psychological evaluations; and

(B) motions concerning child abuse and neglect.

(11) Decrees.

(12) If the child is adjudicated as a delinquent child for an act or combination of acts described in subsection (a)(1), (a)(2), or (a)(3), the child's photograph.

(c) The clerk of the juvenile court shall place all other records of the child alleged to be or adjudicated as a delinquent child in an envelope marked "confidential" inside the court's file pertaining to the child. Records placed in the confidential envelope may only be released to persons who are allowed disclosure under this section or section 2, 3, 4, 5, 6, 7 or 10 of this chapter. The identifying information of any child who is a victim or a witness shall remain confidential under this section."

28. The contention of counsel for Charity Bailey that the requesting party has not filed a "petition" seeking access to the juvenile delinquency matters is without merit. The Court finds that the "petition" referred to in the statute, is a Petition alleging that a child is a delinquent child.

29. The Court further finds that the cases here at issue are an aggregate of two (2) unrelated acts that would be misdemeanors if committed by an adult and that Charity Bailey was at least twelve (12) years of age when the acts were committed.

30. Counsel for Charity Bailey's assertion that Ind.Code § 31–39–2–15, which provides "A person who is at least eighteen (18) years of age may waive the restrictions on access to the person's records if the person does so in writing, stating the terms of the person's waiver" prevents access to Ms. Bailey's delinquency records, is also without merit. The Court finds that Ind.Code § 31–39–2–15, permits the affected individual to broaden access beyond that which is granted by statute (the child's name, the child's age, the nature of the offense, Chronological case summaries, Index entries, Summonses, Warrants, Petitions, Orders, Motions, excluding: motions concerning psychological evaluations; and motions concerning child abuse and neglect, Decrees and if the child is adjudicated a delinquent child for an act or combination of acts described in subsection (a)(1), (a)(2), or (a)(3), the child's photograph), not prevent it.

31. The Court therefore finds that access to [the] court's records in the above encaptioned matter should be granted to the requesting party, pursuant to Ind. Code 31–39–2–8.

Appellant's App. at 172–73.[37]

Bailey claims that the juvenile court improperly granted the Star access to her juvenile delinquency records pursuant to Indiana Code Section 31–39–2–8, asserting that the statute

> contemplates the release of a current juvenile court record where the charges are either murder or a felony, the aggregate of two unrelated acts that would be misdemeanors; or an aggregate of five unrelated acts. This is confirmed when read in conjunction with Indiana Code Section 31–39–[2–10], which addresses when the court must find that it is in the best interest of the safety and welfare of the community for the public to obtain information about the alleged act (murder or a felony or a pattern of less serious offenses).

Appellant's Br. at 19–20.

While we do not agree with Bailey's contention that Indiana Code Section 31–39–2–8 contemplates only "the release of a current juvenile court record"—that is, a record in a pending juvenile delinquency case—we believe that the plain language of the statute indicates that the record must relate to the act or acts that serve as the basis for the delinquency allegation. Although Bailey's alleged neglect and murder of T.B. were the crimes that prompted the Star's request for access to her delinquency records, those acts were not the bases for the delinquency allegations, and thus the juvenile court erred in releasing its records regarding Bailey's delinquency proceedings pursuant to Indiana Code Section 31–39–2–8. Therefore, we reverse

---

37. Because neither the juvenile court's order nor the parties' briefs discuss whether and to what extent the records of Bailey's juvenile delinquency proceedings fall within the scope of Indiana Code Section 31–39–1–1(a)(1), we do not address that issue.

that portion of the juvenile court's January 3, 2008 order.[38]

### VII. Release of DCS Records

 Finally, in its December 6, 2007 order, the juvenile court granted the Star access to IDCS and MCDCS records regarding T.B. The order reads in pertinent part as follows:

1. In general, reports concerning child abuse and neglect made to the Department of Child Services ("DCS") and any county office thereof, in this case, the Marion County Department of Child Services ("MCDCS") are confidential. See Ind.Code § 31–33–18–1.

2. However, Ind.Code § 31–33–18–1.5 provides an important exception to this general blanket of confidentiality. Where a child's death may have been the result of abuse, abandonment or neglect, the records held by, *inter alia,* DCS and MCDCS regarding such child may be released by the court exercising juvenile jurisdiction in the county in which the child's death occurred, after certain specified identifying information has been redacted.

3. For purposes of determining whether DCS' and MCDCS' records are exempted from confidentiality, Ind.Code § 31–33–18–1.5(b) provides that a child's death or near fatality may have been the result of abuse, abandonment, or neglect, under Ind.Code § 31–33–18 if:

(1) an entity described in subsection (a) determines that the child's death or near fatality is the result of abuse, abandonment, or neglect; or

(2) a prosecuting attorney files:

(A) an indictment or information; or

(B) a complaint alleging the commission of a delinquent act;

that, if proven, would cause a reasonable person to believe that the child's death or near fatality may have been the result of abuse, abandonment, or neglect.

4. Upon the request of any person, or upon its own motion, the court exercising juvenile jurisdiction in the county in which the child's death or near fatality occurred shall determine whether the allegations contained in the indictment, information, or complaint described in subdivision (2), if proven, would cause a reasonable person to believe that the child's death or near fatality may have been the result of abuse, abandonment, or neglect.

5. In the instant case, the Marion County Superior Court, Juvenile Division, which is the court exercising juvenile jurisdiction in the county in which [T.B.] died, on its own motion finds and determines that:

A. Based upon a certified copy of the Affidavit for Probable Cause and Information filed on November 28, 2007, the Prosecuting Attorney of the Nineteenth Judicial Circuit filed criminal charges under cause number, 49G01–0711 –MR–252550, *State of Indiana v. Charity Bailey and Lawrence Green,* ... [T.B.] died Tuesday, November 27, 2007, in Marion County, Indiana.

B. Both DCS and MCDCS are entities described in subsection (a) of Ind. Code § 31–33–18–1.5[.]

C. However, neither of said entities has yet determined that [T.B.'s] death is the result of abuse, abandonment, or neglect.

**38.** Because the juvenile court did not enter findings and conclusions regarding whether the juvenile delinquency records could be released pursuant to another statute, such as Indiana Code Section 31–39–2–10, and because the issue is now moot, we decline to remand for such a determination or to make such a determination in this appeal.

D. This Court is the court in Marion County exercising juvenile jurisdiction.

E. The Court on its own motion, determined that it needed to ascertain whether the allegations in the information, if proven, would cause a reasonable person to believe that [T.B.'s] death may have been the result of abuse, abandonment, or neglect.

F. The criminal charging Information ... alleges:

**Count I:** "Charity Bailey and Lawrence Green, on or about November 27, 2007, did knowingly, kill another human being, namely: [T.B.], by inflicting multiple blunt force injuries at and against the person of [T.B.], thereby inflicting mortal injuries upon [T.B.], causing [T.B.] to die."

**Count II:** Charity Bailey and Lawrence Green, both being at least eighteen (18) years of age, did, on or about November 26–27, 2007, having the care of [T.B.], a dependent three (3) years of age, knowingly place [T.B.] in a situation that endangered the life or health of [T.B.], that is: over a period of days beat the child and/or failed to obtain medical treatment for the child, resulting in the death of [T.B.]

**Count III:** Charity Bailey and Lawrence Green, on or about May 17–24, 2006, having the care of [T.B.], a dependent, approximately 21 months of age, did knowingly place [T.B.] in a situation that endangered the life or health of [T.B.], that is: beat [T.B.] and /or failed to obtain medical treatment for the child.

**Count IV:** Charity Bailey and Lawrence Green, on or about November 1–27, 2007, having the care of [T.B.], a dependent three (3) years of age, did knowingly place [T.B.] in a situation that endangered the life or health of [T.B.], that is: kept her in a home under unsafe living conditions due to mice, cockroaches and extreme filth.

*[Count V: pertains to a living child who did not suffer a near fatality as defined under Ind.Code § 31–33–18–1.5(b) and is therefore not relevant to the Court's determination].*

**Count VI:** Lawrence Green, on or about November 19–23, 2007, being at least eighteen (18) years of age, did knowingly touch [T.B.], a person who was under [the age] of fourteen (14) years, that is: three years of age, in a rude, insolent or angry manner, that is: struck [T.B.] and/or hung her on a coat hook, which resulted in bodily injury, that is pain and/or bruising to [T.B.]

All of which is contrary to statute and against the peace and dignity of the State of Indiana."

G. The Court therefore requested the entities having control of the records, to-wit: DCS and MCDCS to transmit to it the original records, which they have done in an unprecedented short time frame.

H. Upon receipt of the records from the entities, the Court is required by Ind.Code § 31–33–18–1.5(f) to redact from the transmitted records identifying information described in Ind.Code § 31–33–18–1.5(c)(1)(B) through (c)(1)(F) of a person; and all identifying information of a child less than eighteen (18) years of age.

I. The Court finds there is no doubt that the allegations contained in [the charging information], if proven true, would cause any reasonable person to believe that [T.B.'s] death may have been the result of abuse, abandonment, or neglect.

J. Accordingly, unless information in records held by DCS and/or MCDCS regarding [T.B.], is other-

wise confidential under state or federal law, those records which have been redacted in accordance with Ind.Code 31–33–18–1.5(c) requiring identifying information to be removed, are not confidential and may be disclosed to any person who requests the record. Ind.Code § 31–33–18–1.5(h)[.]

K. However, any person requesting the record may be required to pay the reasonable expenses of copying the record. *Id.*

. . . .

38. The Court finds that any health records, records containing drug and alcohol treatment information and mental health records contained in the records tendered to the Court by DCS, are confidential under state and/or federal law and therefore, those documents, if any, which were provided by DCS and/or MCDCS to the court, fall within these categories of records which remain confidential.

39. In reviewing the records produced by DCS to the Court, the Court, where possible, simply redacted the above-referenced information as described above, along with redacting the required "identifying information" as specified in Ind. Code § 31–33–18–1.5(c). However, the Court found one hundred forty-five (137)[sic] pages of documents which it determined to be confidential in their entirety, eight (8) pages of documents

which it was unable to read in order to determine whether they were confidential, in whole or part, and two (2) pages of documents which did not pertain to the instant case; the Court has removed all these afore-mentioned documents from those to which access is being granted, and sealed same as "confidential".

**IT IS THEREFORE ORDERED, ADJUDGED AND DECREED** that any and all records held by DCS and/or MCDCS regarding [T.B.], date of birth 8/12/04, which are not otherwise confidential under state or federal law, and which have been redacted in accordance with Ind.Code § 31–33–18–1.5(c) requiring identifying information to be removed, are not confidential and may be disclosed to any person who requests the record.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** any and all persons requesting said records shall be required to pay the reasonable expenses of copying said records.

*Id.* at 139–41, 148–49 (bracketed italicized text in original).

In claiming that the juvenile court erred in releasing the DCS records to the Star, Bailey disregards the plain language of Indiana Code Section 31–33–18–1.5, which provides that a properly redacted [39] DCS record "regarding a child whose death or near fatality may have been the result of abuse, abandonment, or neglect" that is

---

**39.** Bailey asserts that

the court's redactions, done in haste, are inadequate. [See supplemental appendix pages 1–2360, or representative supplemental appendix, ... p. 2, T.B.'s name not redacted, p. 28, case worker and supervisor names not redacted, p. 46, C.B.'s name on title of report]. A review of the redacted records indicates almost all identifying information is readily discernable.

Appellant's Br. at 17 (footnote omitted) (bracketed text in original). The Star takes

issue with Bailey's "citing three instances out of 2,360 pages of documents where she was dissatisfied with the court's redactions[.]" Appellee's Br. at 26 n. 9. The Star notes that Bailey "did not raise any objection to the redactions below" and that she "similarly cites no instances where any media outlet published any information contained in the three instances where she alleges redactions were insufficient." *Id.* In view of these considerations, we find no grounds for reversal here.

otherwise not confidential under state or federal law "may be disclosed to *any person* who requests the record." (Emphasis added.) Bailey wisely does not contend that T.B.'s death was anything other than the result of abuse, abandonment, or neglect, and she does not claim that the records are otherwise confidential under state or federal law. As such, her argument is unavailing. Therefore, we affirm the juvenile court's December 6, 2007 order releasing the redacted DCS records pursuant to Indiana Code Section 31–33–18–1.5.

Affirmed in part and reversed in part.

KIRSCH, J., and VAIDIK, J., concur.

While we acknowledge Bailey's concern that "service providers may be reluctant to work with the courts within the juvenile and CHINS framework if they believe the information they provide will not be confidential," Appellant's Br. at 23, we presume that such providers are both aware of and familiar with the rules and statutes authorizing the disclosure of such information in certain circumstances. As for Bailey's fear that releasing confidential information in CHINS proceedings will encourage respondents to become less honest and cooperative with the court and service providers, we believe that such concerns are addressed in the commentary to Administrative Rule 9(A). *See* Ind. Administrative Rule 9(A), cmt. ("It is also important to remember that, generally, at least some of the parties in a court case are not in court voluntarily, but rather have been brought into court by plaintiffs or by the government. A person who is not a party to the action may also be mentioned in the court record. Care should be taken that the privacy rights and interests of such involuntary parties or 'third' persons are not unduly compromised.").